FANNIE BOEHME v. SOVEREIGN CAMP, WOODMEN OF THE WORLD.

No. 1380.    Decided January 16, 1905.

1.—Evidence—Verdict of Coroner's Jury.

In an action on an insurance policy, upon the issue whether insured died by suicide, an excepted risk, or by accident, the verdict of the coroner's jury finding that death was from the former cause was not admissible in evidence.    (Pp. 377-380.)

2.—Same.

Coroner's inquests as held under the common law distinguished from similar proceedings under our statutes, and held to be res inter alios acta as to the rights of third parties, who are not entitled to appear or examine witnesses, nor even to be present, since the inquest may be held in secret. (Pp. 378, 379.)

Question certified from the Court of Civil Appeals for the First District, in an appeal from Brazos County.

*A. C. Brietz, W. T. Young,* and *V. B. Hudson,* for appellant.—The record of the inquest proceedings containing the finding of the coroner that Otto Boehme came to his death by his own hands was not admissible in evidence in this suit for the purpose of proving that fact, over the objection urged by appellant. Germania Life Ins. Co. v. Ross-Lewin, 51 Pac. Rep., 488, and the authorities therein cited: Union Central Life Ins. Co. v. Hollowell, 43 N. E. Rep., 277; Aetna Life Ins. Co. v. Milward, 82 S. W. Rep., 364; Cox v. Royal T. of J., 95 Am. St. Rep., 752; Small v. State of Georgia, 40 L. R. A., 369; 2 Posey U. C., 160; McCamant v. Roberts, 66 Texas, 263; Pratt v. Jones, 64 Texas, 696; Code Crim. Proc., art. 1028; Price v. State, 43 S. W. Rep., 96; Overand v. Menczer, 83 Texas, 126.

*Doremus & Butler,* for appellee.—The verdict of the coroner or inquest proceedings are admissible as prima facie evidence that death resulted as is evidenced in the verdict.

The verdict of the coroner or inquest proceedings are admissible as competent evidence on the theory that it is a public record. Said inquest proceedings are admissible under the common law, the same being in no way repealed by statute of this State. Greenl. on Ev., sec. 556; 2 Am. and Eng. Enc. of Law, 467; 2 Black on Judgments, sec. 802; McCammant v. Roberts, 66 Texas, 263; Mutual Life Ins. Co. v. Hayward, 27 S. W. Rep., 36, 38; U. S. Life Ins. Co. v. Kielgast, 22 N. E. Rep., 467; Metzradt v. Modern Brotherhood, 84 N. W. Rep., 498; People v. Divine, 44 Cal., 452; Mutual B. Life Ins. Co. v. Tisdale, 91 U. S., 238.

GAINES, Chief Justice.—This is a certified question from the Court of Civil Appeals for the First Supreme Judicial District. The statement and question are as follows:

"This is a suit by appellant to recover upon a death benefit certificate issued by appellee to Otto Boehme, the deceased husband of appellant, and payable to her.

"The appellee defended upon the ground that Otto Boehme committed suicide within three years after the issuance of the certificate and therefore the certificate by its express terms was void.

"The issues of suicide and of accidental death are both raised by the evidence.

"Otto Boehme came to his death on February 6, 1903. The trial in the court below was had on October 7, 1903. Upon the trial below appellee introduced in evidence upon the issue of suicide the record of the finding of W. G. Mitchell, the justice of the peace who held an inquest on the body of Otto Boehme the day of his death. The finding of the justice as shown by this record was that said Boehme committed suicide. This evidence was objected to by the appellant upon the ground 'that the inquest proceedings were ex parte and not binding upon her, and that the finding of the justice was inadmissible as evidence of the fact therein found, because it was not the best evidence of such fact, all of the witnesses who testified at said inquest, including the justice who made said finding, being present and having testified in this case.'

"The record in this case shows that the justice of the peace and all of the witnesses, save one, who testified at the inquest were present and testified at the trial below and that all of the facts upon which the justice based his finding were before the jury.

"At the last term of this court we reversed the judgment of the court below on the ground that the finding of the coroner above referred to was not admissible as evidence against appellant on the issue of whether the deceased, Otto Boehme, committed suicide. Appellee in a motion for rehearing now pending before us insists that our ruling was erroneous. The majority of the court are inclined to withdraw the former ruling, but Justice Pleasants is of opinion that the evidence was not ad-

·missible and that the motion for rehearing should be overruled. Being ·in doubt as to what disposition should be made of the motion for rehearing we respectfully certify for your decision the question:

"Was the record of the inquest proceedings containing the finding of the coroner, that Otto Boehme came to his death by his own hands, admissible in evidence in this suit for the purpose of proving that fact, over the objection urged by appellant as above set out?"

We are of opinion that the evidence should have been excluded.

That the verdict of a jury upon a coroner's inquest may be admitted upon a trial of a civil case seems to be the established rule in England—at least in so far as the decisions of trial courts and the opinions of text writers may establish a rule of law. But upon what sound principle such evidence is made an exception to the rule which excludes "res inter alios acta" it is difficult for us to understand. We have found the grounds for the admission of such evidence more clearly stated by no one than Mr. Starkie, who says: "Such inquests are of a public nature, and taken under competent authority, to ascertain a matter of public interest, are, upon principles already announced, admissible in evidence against all the world. They are very analogous to adjudications in rem; being made on behalf of the public, no one is properly a stranger to them; and all who can be affected by them usually have the power of contesting them. In general, where property is vested in the crown upon an inquest of office, by a coroner, escheator or other officer of the crown, the parties affected by the inquest have a right of traverse reserved to them, or they may proceed by monstrans de droit. Upon a finding of felo de se, the executor or administrator may remove it into the Court of King's Bench, and traverse it, for it would be hard that he should be concluded by an inquisition, which is nothing more than an inquest of office, taken behind his back. By the express provisions of many statutes, inquests of office before escheators are required to be held in a public open place, and everyone is to be heard in evidence." Starkie's Evidence, 10 ed., 403. However satisfactory these remarks may be as to such inquests at common law as resulted in the escheat of property to the crown, they seem to us unsatisfactory as to the findings of a coroner's jury as to the circumstances of a death. But if the principle be sound, it is not in our opinion applicable to a coroner's inquest under our statute. The purpose of such inquest under our law is merely to detect crime and to take the preliminary steps to secure a trial of the supposed offender. Besides, under article 1029 of the Code of Criminal Procedure, the justice of the peace, who performs the functions of the coroner at common law, may if he deem proper hold the inquest in private; and by article 1030 it is expressly provided that even if other persons be present "they shall not interfere in the proceedings, and no question shall be asked a witness except by the justice, the accused or his counsel and the counsel for the State." Clearly therefore the inquest under our law is not necessarily a public proceeding to which anyone save the State and the accused is a party. Again under our statute there is no mode provided for travers-

ing the finding of the justice who holds an inquest, nor is any method
whatever secured for the correction of an erroneous finding.    Conse--
quently a post mortem inquest under our law is lacking in three attributes
of such an inquest at common law:   First, it may not be public; second,.
no one save the counsel for the State and the accused and his counsel
have the right to examine the witnesses; and third, there is no means.
by which the finding upon the inquest may be reversed and set aside.
Evidently the proceeding is not one in rem, or does it bear any analogy
to such a proceeding.    Therefore we are of opinion that in providing
for a post mortem inquest, under the restrictions above mentioned, it
was not the purpose of our lawmakers to give it all the attributes and
to attach to it all the consequences of a similar inquest at common law.
Especially do we think that it was not a purpose of our lawmakers to
make the inquest a means of perpetuating testimony to be used in a civil
suit or by the finding of the justice to manufacture evidence for use in a
case between other parties.    Commenting upon the impolicy of such a rule
Chief Justice Hayt of the Supreme Court of Colorado says:   "In case
of death under suspicious circumstances, or resulting from accident, the
rule permitting inquisitions to be used in evidence would result in a
race and scramble to secure a favorable coroner's verdict, that would in-
fluence, and perhaps control, in case suit should be instituted against life
insurance companies upon policies of insurance, and in cases of acci-
dents occurring as a result of negligence on the part of corporations ope-
rating railways, street car lines, mining for coal or the precious metals,
et cetera.    Law writers, of late, have frequently animadverted upon the
carelessness with which such inquests are frequently conducted, and to
allow inquisitions to be used in a suit between private parties upon a
cause of action growing out of the death of the deceased, as in this case,
would be to introduce an element of uncertainty into the practice which,·
we think, would be contrary to public policy, and pernicious in the ex-
treme; and for these reasons we conclude upon careful consideration, that
the safer and better rule is to exclude such inquisitions."    Germania, etc.,
Ins. Co. v. Lewin, 24 Col., 43.

Even should it be held that the justice's finding at the inquest is ad-
missible in any case, we should doubt the applicability of the rule in the
present case.    The question before the justice who held the inquest was,
whether anyone was responsible for the death of Boehme.    Having found
that no one was responsible, it seems to us his function was at an end
and he had no power to pass upon any other question.    If the death of
the deceased was not caused by some other person the State was not con-
cerned in ascertaining the manner of his death.    See State v. County
Commissioners, 54 Md., 426; Mutual Benefit Life Ins. Co. v. Tisdale,
91 U. S., 238.

If the finding of a justice of the peace upon an inquest be admissible
in evidence, it would seem that for a stronger reason the grant of letters
of administration upon the estate of a person would be evidence of the

death of such person, even between third parties; but it has been held otherwise both by this court and by the Supreme Court of the United States. McCamant v. Roberts, 66 Texas, 260; Mutual Benefit Life Ins. Co. v. Tisdale, 91 U. S., 238.

In the courts of the States of this Union there is a decided conflict of ruling upon the question, as a question under the common law. But since we think our decision should be controlled by peculiar provisions of our statute, we deem it a profitless task to discuss the decisions upon the point. In the case from Colorado already cited and in the recent case of Aetna Life Insurance Company v. Milward, in the Supreme Court of Kentucky, 82 S. W. Rep., 364, the authorities are ably and exhaustively reviewed; and in both cases it is held that evidence of the character of that in question is not admissible.

We answer the question certified in the negative.