## TEXAS EMPLOYERS' INS. ASS'N v. RITCHIE.
### No. 1308.

Court of Civil Appeals of Texas. Eastland.
Sept. 28, 1934.

Rehearing Denied Nov. 2, 1934.

Lawther, Cox & Cramer, of Dallas, for appellant.

Thomas & McDonald, of Big Spring, for appellee.

LESLIE, Justice.

This is a workmen's compensation case growing out of the death of I. B. Ritchie. Upon the jury's answers to special issues, judgment was rendered for the claimant, appellee, and the Texas Employers' Insurance Association appeals. By three assignments of error it is presented that the district court committed material error in the trial of this case.

The jury found (1) that I. B. Ritchie was in the employ of the Lincoln Tank Company on November 29, 1932, the date of his death; (2) that his weekly wage was $40; (3) that the injuries resulting in his death were received in the course of his employment; (4) that he did not commit suicide; (5) that he was hit at the crossing; (6) that he had not turned off the direct route home; (7) that he had not turned off the highway onto the railroad track before the accident; and (8) that said Ritchie had worked for the same employer at the same kind of employment more than a year prior to November 29, 1932.

By the first assignment of error the contention is made that the trial court erred in overruling the appellant's motion for an instructed verdict. This assignment is supported by three propositions to the effect (1) that, when the evidence only raises a suspicion or set of facts making it possible to guess that an accident occurred at one of many different places, a jury question is not raised in the face of testimony of two disinterested eyewitnesses who saw and testified positively where the accident occurred; (2) that the burden of proof as to where the accident occurred, being on the appellee, was not discharged, "as a matter of law" where only suspicious circumstances are offered as against the testimony of two eyewitnesses; and (3) that, since the evidence showed the deceased's departure from the course of his employment, and no explanation of such departure, the trial court erred in overruling the motion for an instructed verdict in its favor.

The exact place where the accident occurred seems to have been regarded, more or less, by all litigants as determinative of the important ultimate issue of whether the deceased was in the course of his employment when he met his death, notwithstanding the jury in answer to another issue (No. 3) made a direct finding that the deceased received his

944

injuries in the course of his employment. The appellee contends that the passenger train (going 61 miles an hour) struck the automobile driven by her husband at the railroad crossing 7 miles west of Big Spring, and the appellant contends that the train struck the car 1,850 feet west of the crossing at a time and place when the deceased had departed from the course of his employment and was on a side trip or errand of his own.

■ The deceased left his home in Big Spring, Tex., about 4 o'clock in the morning on the day of the accident for distant points on company business, and, if he was killed while in his car about 1,850 feet west of said crossing, that is the only evidence indicating, if it does, that he at any time, going or returning, departed from the course of his employment. The jury, in response to an issue not objected to by either party, found he was hit at the crossing. Assuming the issue as to the point of the accident to carry the materiality conceded to it by the litigants, this court has carefully considered the testimony on this controverted point, and we unhesitatingly conclude that the evidence in the record required the submission of the case to the jury. Obviously, the contention here made by the appellant means that, at the conclusion of the introduction of testimony, no evidence had been introduced warranting the submission of the case to the jury. A casual reading of the testimony will disclose that this contention is not well founded. In the state of this testimony, the point under consideration must be determined by employing the rule stated in the following excerpt from the opinion by our Supreme Court in the case of Underwood v. Security Life & Annuity Co. of America, 108 Tex. 381, 194 S. W. 585, 587: "This court, speaking through the late Chief Justice Brown, in the case of Wininger v. Railway, 105 Tex. 56, 143 S. W. 1150, announced the correct rule when testing the probative force of the evidence when it said: 'If, discarding all adverse evidence and giving credit to all evidence favorable to the plaintiff and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff'—then there was evidence to support their verdict."

No useful purpose would be served by quoting the testimony, but, having read it, we conclude the court committed no error in overruling the appellant's motion for an instructed verdict. The most that can be said about the testimony on the point presented is that the evidence was conflicting and sufficient to support a jury finding either way.

■■ The trial court committed no error in admitting in evidence the testimony of appellee, Mrs. Ritchie, to the effect that at 3 o'clock on the day of I. B. Ritchie's death she had a long-distance telephone conversation with him with reference to business of the Lincoln Tank Company, his employer. In that connection she testified she knew her husband's voice over the telephone and knew the conversation was with him, and that it concerned the company's business.

This is not a self-serving declaration, nor has it any of the elements of hearsay testimony. In 22 C. J. p. 199, § 166, it is said that "evidence is called hearsay when its probative force depends, in whole or in part, on the competency and credibility of some person other than the witness by whom it is sought to be produced." The authorities generally so define it. Applying this rule to the testimony challenged by this assignment and its supporting proposition, it is clear that it has none of the vice or fatal characteristics of hearsay testimony, viz., dependence on the veracity and competency of some person other than the witness. The witness testified to matters within her own knowledge, and there was no error in the admission of this character of testimony. The following authorities sustain the ruling: St. Louis S. W. Ry. Co. v. Kennedy (Tex. Civ. App.) 96 S. W. 653 (writ refused); Maryland Casualty Co. v. Stevens (Tex. Civ. App.) 55 S.W.(2d) 149 (writ refused); G. C. & S. F. Ry. Co. v. Funk, 42 Tex. Civ. App. 490, 92 S. W. 1032; Moore v. Follett (Tex. Civ. App.) 11 S.W.(2d) 662; Harkrider-Keith-Cooke Co. v. Smith (Tex. Civ. App.) 284 S. W. 612; Owens v. First State Bank of Bronte (Tex. Civ. App.) 167 S. W. 798; Rotan Grocery Co. v. Tatum (Tex. Civ. App.) 149 S. W. 342; Denton v. English (Tex. Civ. App.) 171 S. W. 248; Lancaster et al. v. Magrill (Tex. Civ. App.) 244 S. W. 1078; 22 C. J. p. 205.

■ Further, the trial court did not err in excluding, upon proper objections, the coroner's official report of his investigation into the death of I. B. Ritchie. The admission of this testimony was objected to on various grounds, among them: (1) That it was an ex parte statement by the justice of the peace; (2) that it was a hearing to which the claimant, Mrs. Ritchie, the wife of the deceased, was not a party; (3) she had no right or chance to cross-examine the witness at the inquest, or to present evidence at that hearing; and (4) that the findings of the

justice of the peace were purely hearsay as offered on the issues of this case.

Suffice it to say that the coroner's report was full of findings, statements, and conclusions on the issues constituting the very gist of this lawsuit, and which were about to be submitted to the jury. For instance, it contained the statement that tracks of one of the wheels of the automobile driven by the deceased were to be found on the west side of the railroad track at intervals from the railroad crossing to the place of the collision; that the collision of the train with the automobile took place about 1,800 feet from the crossing, etc. This, in substance, reflects the nature of the report rejected as evidence by the trial court. We think there was no error in this ruling. The question of the admissibility of this character of testimony has long been settled by the decision of our Supreme Court written by Chief Justice Gaines in Boehme v. Sovereign Camp, W. O. W., 98 Tex. 376, 84 S. W. 422, 423, 4 Ann. Cas. 1019. In that case it was sought to prove that the insured under a life insurance policy committed suicide by introducing in evidence the coroner's finding to that effect. The opinion of the Supreme Court there points out that an inquest under our law is lacking in three attributes of such an inquest at common law, viz.: "(1) It may not be public; (2) no one save the counsel for the state and the accused and his counsel have the right to examine the witnesses; and (3) there is no means by which the finding upon the inquest may be reversed and set aside." The court then proceeded to express its conclusions on the question of admissibility of such a report in this language: "Therefore we are of opinion that, in providing for a post mortem inquest under the restrictions above mentioned, it was not the purpose of our law makers to give it all the attributes and to attach to it all the consequences of a similar inquest at common law. Especially do we think that it was not a purpose of our lawmakers to make the inquest a means of perpetuating testimony to be used in a civil suit, or by the finding of the justice to manufacture evidence for use in a case between other parties."

In that opinion Chief Justice Gaines quoted with approval the following language from the opinion of the Supreme Court of Colorado in passing upon the same question: "In case of death under suspicious circumstances, or resulting from accident, the rule permitting inquisitions to be used in evidence would result in a race and scramble to secure a favorable coroner's verdict, that would influence, and perhaps control, in case suit should be instituted against life insurance companies upon policies of insurance, and in cases of accidents occurring as a result of negligence on the part of corporations operating railways," etc.

Under the facts in this case, the authorities exclude such inquisitions when offered as testimony in a civil suit. That is a sound rule, and we follow it.

The judgment of the trial court should be affirmed. It is so ordered.

### On Rehearing.

■■ On a former day of this term we affirmed the judgment of the trial court. The appellant has filed an able motion for rehearing, and, in the light of that motion, we have re-examined the questions raised by this appeal. Special attack is made upon that part of the judgment of the trial court and our judgment in affirming the same, wherein was sustained the finding that the deceased was hit by the train at the railroad crossing. As we understand the appellant's contention, it is to the effect that, the engineer and the fireman having testified that the train operated by them struck the deceased about 1,850 feet west of the crossing, it is therefore conclusive that the deceased was killed at that point and at a time and place when he was not in the course of his employment. We made a careful study of the testimony before handing down the original opinion, and we reached the conclusion that there was evidence to support the verdict of the jury, and, after a reconsideration of the testimony, we are still of that opinion. Further, we do not believe that the fact of where the train hit the automobile and killed the deceased is more than an evidentiary matter. If he had been killed at the point testified to by the engineer and the fireman, it would not conclusively establish that the deceased was not in the course of his employment at the time. There is evidence in this record that he left his home in Big Spring on company business, made the journey in the course of his employment, and that he was returning to his home in the course of his employment on the same day. Also, in answer to issue No. 2, the jury made its finding upon an ultimate issue when by its verdict it found that the injuries resulting in his death were received in the course of his employment. This we regard as the material finding, rather than the place where the accident occurred.

■ Further, we cannot say from this record that the testimony of the engineer and

the fireman necessarily comes from disinterested witnesses. The liability of negligent third parties, if any, often enters into cases arising under the Workmen's Compensation Law (Vernon's Ann. Civ. St. art. 8306 et seq.).

For the reasons assigned, the motion will be overruled.