**FIRST STATES LIFE CO. v. RANSOM.**

No. 1929.

Court of Civil Appeals of Texas. Waco.

Nov. 4, 1937.

Rehearing Denied Dec. 2, 1937.

Sullivan & Wilson and J. Lee Zumwalt, all of Dallas, for plaintiff in error.

A. R. Stout, of Ennis, for defendant in error.

ALEXANDER, Justice.

In a trial without a jury, judgment was rendered in favor of the beneficiary against the insurance company on an insurance policy issued on the life of Mrs. O. D. Kennedy. The insurance company appealed.

The insurance company defended on the ground that the insured committed suicide in violation of the terms of the policy. It here contends that the trial judge's finding against suicide is contrary to the evidence. At the time of her death, the insured was living in the home of her son, R. O. Kennedy. Mr. and Mrs. R. O. Kennedy, who were hostile to the beneficiary, were the only witnesses who testified to any circumstances tending to show suicide. They testified, in effect, that the insured's husband had been dead about fifteen months, and that since that time she had been despondent and had frequently stated that she had nothing to live for and did not want to live. On a previous occasion, several months prior to her death, she had taken some bichloride of mercury tablets under circumstances indicating an intention to commit suicide, but had recovered from the effect thereof. She was accustomed to having sick spells with her stomach. These spells would occur at intervals of about two or three weeks and would last for a day or two. On the morning of her death, she arose and dressed herself, but was complaining of being sick and declined to eat any breakfast. She lay down across the bed with her clothes on and was groaning and complaining of being sick. While the family were eating breakfast, they heard a noise in her room and upon going to her room they found her to be very sick. She said to her daughter-in-law: "Ruth, I believe I am going to die this time. I don't want to live." They asked her if she had taken anything, but she did not answer them. She died a few minutes thereafter. Both Mr. and Mrs. R. O. Kennedy testified that immediately after the death of the insured they found two boxes of oxalic acid in a dresser drawer of her room. One of the boxes was full and the other practically empty. They found a glass with a spoon in it in the bathroom, and, while the witnesses did not so state, we think it may be inferred that the glass in question contained a solution of oxalic acid. Oxalic acid is a white crystalline poisonous compound used in bleaching and dyeing and is commonly used for household purposes in removing spots and stains from furniture, linen, straw hats, etc. It so resembles epsom salts that manufacturers and text-writers advise pharmacists to caution purchasers not to mistake it for epsom salts. The above is all the evidence that was presented in any wise tending to prove that the insured committed suicide.

It will be noted that there was no proof that the insured had bought the oxalic acid, nor that she had mixed the solution found in the glass, or that she had taken any part thereof. No testimony whatever was offered to prove that she had died of symptoms indicating the use of oxalic acid. The most that the insurance company proved was that the insured, after the death of her husband, had become despondent and tired of living; that she had a tendency toward suicide; that she died suddenly and there was a poisonous solution in the house with which she could have committed suicide. The Kennedy family consisted of the husband, and wife, two children, and a housekeeper. Mr. and Mrs. Kennedy alone testified. Neither of them were asked as to whether they had bought the oxalic acid in question, or whether they had mixed the solution found in the glass, and neither of them volunteered any information along this line. No one undertook to testify that the housekeeper had not prepared said solution for use for household purposes. There was no evidence that the insured had taken any of the solution prior to her death. Under these circumstances, it would be rash for this court to presume, contrary to the implied findings of the trial court, that the insured intentionally took the poisonous solution for the purpose of taking her own life and that she died as a result thereof. It would be far more reasonable to presume that she died as the result of the sick spells to which she was subject, or from some other natural cause. The burden of proof was on the insurance company to overcome the natural presumption against suicide, and, even if it had been established that the insured took the poisonous solution and died as a result thereof, the presumption would have prevailed sufficient to sustain the trial court's finding that

she took it accidentally and not with the intention of taking her own life. 24 Tex. Jur. 1263; Home Benefit Ass'n v. Briggs (Tex.Civ.App.) 61 S.W.2d 867, par. 6, and authorities there cited.

 There was no error on the part of the trial court in refusing to admit in evidence the evidence taken at the coroner's inquest and the verdict thereon. 24 Tex. Jur. 1231, 1265; Boehme v. Sovereign Camp, W. O. W., 98 Tex. 376, 84 S.W. 422, 4 Ann.Cas.1019; Dent v. National Life & Accident Ins. Co. (Tex.Civ.App.) 6 S. W.2d 195.

The judgment of the trial court is affirmed.