## LANGLITZ v. AMERICAN NAT. INS. CO.
### No. 2070.

Court of Civil Appeals of Texas. Eastland.
Dec. 20, 1940.

Rehearing Denied Jan. 10, 1941.

R. L. Rust, of Eastland, and Sayles & Sayles, of Abilene, for appellant.

Conner & Conner, of Eastland, for appellee.

FUNDERBURK, Justice.

Mrs. Tee Clyde Langlitz, surviving wife of Leonard O. Langlitz, brought this suit against American National Insurance Company to recover, as beneficiary, upon a policy of insurance issued to her said husband. The Insured was alleged to have died from gunshot wounds by reason whereof his death was by accidental means, and the Beneficiary entitled to recover double indemnity, according to a provision of the policy.

The defense was urged that the Insured's death was suicide, occurring within two years from the issuance of the policy, by reason whereof, as provided in the policy, the liability of the Insurer was limited to payment to the Beneficiary of the amount of the premiums which had been paid by the Insured to the Insurer, which premiums had been duly tendered.

In a jury trial it was found by the verdict that Insured "did shoot himself intentionally"; that "he did commit suicide"; that "the wound on the body of the deceased, Leonard O. Langlitz, was" not "received by accidental means."

From the judgment for the Insurer, the Beneficiary has appealed. For brevity, we shall continue to designate the plaintiff (appellant) as "Beneficiary"; the defendant (appellee) as the "Insurer", and the deceased Leonard O. Langlitz as the "Insured."

The Beneficiary has briefed four assignments of error. The first, while alleging that the "court erred in rendering judgment in favor of the appellee", which alone because of its generality presents nothing sufficiently specific for review, further alleges that "the verdict of the jury was contrary to the law and evidence", subject to the same objection, but upon the whole the assignment is perhaps rendered sufficient by reason of further particular allegation as follows: "There was no evidence of probative force showing any motive on the part of the Insured to commit suicide", and "there was no evidence to overcome the presumption of law aiding the theory of accidental death."

We have no difficulty in arriving at the conclusion that evidence of *motive* for committing suicide is not indispensable to the sufficiency of evidence to show suicide. In the absence of any such evidence of motive there may, nevertheless, be other evidence sufficient to support a finding that death was suicide.

The allegation that "there was no evidence to overcome the presumption of law aiding the theory of accidental death" presents a question of a little more difficulty. The difficulty, however, is in properly understanding the nature and effect of the presumption thus referred to.

The Beneficiary, in addition to setting out the policy as an exhibit to her pleadings, alleged one of the obligations of the Insurer to be to pay the Beneficiary, under the provisions of the policy, the sum of $500. Another was to pay $500 additional as a "Double Accidental Death Benefit." As to the $500 double accidental death benefit, a number of exceptions from the liability to pay the same as provided by the policy were alleged, including the exception of death "as a result of self-destruction, or an attempt thereat, whether sane or insane." Regarding these exceptions the Beneficiary alleged that "she has stated the above exceptions as to liability in said policy only because the rules of pleading so requires and she now negatives all said exceptions and says that Leonard O. Langlitz died on or about April 4, 1939 from a gun shot wound inflicted on said date, which was an accidental discharge of said gun and that his death resulted directly and independently of all other causes from bodily injury effected solely through external and accidental means, of which there was a visible contusion and wound on the exterior of the body, to-wit, on his head and * * * he did not commit suicide and his death was not due to intentional self-destruction, but was due solely from accidental means."

There is either a material omission, or if not, at least a want of clearness in the Beneficiary's petition in this: While there is alleged and negatived certain exceptions from the coverage of the policy as regards the "Double Accidental Death Benefit", there are no such allegations as to exceptions from the other obligation of the policy to pay $500 regular life insurance. Referable to this general provision, the policy provides under the heading, "Limitations", as follows: "If the Insured, whether sane or insane, shall commit suicide within two years from the date hereof the liability of the company shall be limited to the amount of cash premiums actually paid on the policy." The date of the policy was February 16, 1938. The alleged date of the death of the Insured, being April 4, 1939, was, therefore, within the suicide time limitation of two years. It, therefore, appears that only by appropriating the negation of exceptions to the double indemnity provision as being also the negation of exceptions to the general obligation can the pleadings be considered sufficient to state a cause of action under the authority of International Travelers Ass'n v. Marshall, 131 Tex. 258, 114 S.W.2d 851, 852, and authorities therein cited.

The rule re-affirmed and applied in the Marshall case was stated as follows: "It has long been held that in a case of this kind the burden rests upon the plaintiff to allege and prove that the death of the insured was by accident, and did not come within the exceptions named in the policy. In order to sustain a judgment based on such policy, plaintiff must negative, by allegation and proof, the exceptions which under the terms of the policy specifically exempt the company from liability." As.

486

to the record in that case, the court further said: " * * * that plaintiff, having failed to make such allegations, by showing that the death of William Wright Marshall came within the general liability assumed by the insurer, and *that it did not come within the excepted causes stated in the policy, did not meet the burden placed upon her."* (Italics ours.)

■ Does the rule thus declared apply to a case where one of the exceptions from the coverage of the policy is suicidal death? We think so. The attempt to recognize in such a case a distinction would, it seems to us, have no reason to support it. In International Travelers' Ass'n v. Bettis, 120 Tex. 67, 35 S.W.2d 1040, which we may refer to as the Bettis case and one of the cases followed in International Travelers Ass'n v. Marshall, supra, the court said [120 Tex. 67, 35 S.W. 1044]: "It is further contended, and was so held by the Court of Civil Appeals in its opinion [3 S.W.2d 478], that, in the absence of any proof · to the contrary, the law aids the deceased with the presumption that he did not intentionally or voluntarily inflict such injury upon himself, and that the rule should apply in this case." The rule thus referred to was stated in the opinion of the Court of Civil Appeals as a quotation from 1 C.J. 495, as follows: " 'Where, however, it is apparent that the injury to or death of the insured was the result of external and violent means, and the issue is as to whether it was due to an accident, within the meaning of the policy, or to some cause excepted by the policy, the presumption is in favor of accident and against the. existence of facts bringing the case within any of the exceptions of the policy, such as insanity of the insured, intentional injury inflicted by a third person, lack of due care and diligence, *self-inflicted injuries, and suicide.'*" (Italics ours.) International Travelers' Ass'n v. Bettis, Tex.Civ.App., 3 S.W.2d 478, 481.

This rule or principle of presumption is readily identifiable as the same in support of which the Beneficiary herein cites the following cases: United States Fidelity Life Ins. Co. v. Adair, Tex.Civ.App., 29 S.W.2d 940, affirmed, Tex.Com.App., 29 S.W.2d 944; Mutual Life Ins. Co. v. Ford, 61 Tex.Civ.App. 412, 130 S.W. 769; Bankers' Health & Acc. Ass'n v. Wilkes, Tex. Civ.App., 209 S.W. 230; Fort Worth Mut. Benev. Ass'n v. Jennings, Tex.Civ.App., 283 S.W. 910; Home Benefit Ass'n v. Buro, Tex.Civ.App., 10 S.W.2d 188; · American Central Life Ins. Co. v. Alexander, Tex.Civ.App., 39 S.W.2d 86, affirmed Tex.Com.App., 56 S.W.2d 864; Supreme Camp of American Woodmen v. McNulty, Tex.Civ.App., 103 S.W.2d 867; First States Life Co. v. Ransom, Tex.Civ. App., 110 S.W.2d 143; Southland Life Ins. Co. v. Brown, Tex.Civ.App., 121 S.W. 2d 653.

As to the operation, or claimed effect, of this rule of presumption as dealt with in the Bettis case, supra, the court said: "Upon this question we express no opinion. If the rule of presumption above stated did apply in this case, the judgment of the trial court could not be sustained, for the reason that the plaintiff did not comply with the rule, which places the burden upon him to *allege* and *prove* that the injury inflicted upon Zack M. Bettis was not received under one of the exceptions stated in the policy. To sustain this judgment, one presumption would have to rest upon another presumption. The well-settled principles of law prohibit this."

We are not entirely certain that we fully understand just how the court reached the conclusion that the said rule of presumption required no expression of opinion for the reason assigned, namely, if it did apply, the judgment would be without necessary support in the pleadings in that "the plaintiff did not comply with the rule which places the burden upon him to *allege* and *prove* the injury inflicted * * * was not received under one of the exceptions stated in the policy." It is sufficiently clear, however, we think that the court did hold that such rule of presumption does not affect the other rule that the plaintiff must allege and prove that exceptions to liability under the terms of a policy did not exist.

■ We shall not undertake here to determine whether there is any necessary conflict between these two rules. We shall rather assume, without deciding, that both rules may operate. If so, it seems pretty clear to us that that can only be possible upon the theory that the evidence of facts to show (making the application to the instant case) that the death of the Insured resulted "from bodily injury effected solely through external violent and accidental means", etc., is at the same time the basis upon which said presumption operates, in lieu ·of evidence, to show that Insured did not "commit suicide." There is involved

no shift whatever of the burden of proof as called for by the required pleadings. The presumption simply stands in lieu of evidence unless and until there is some evidence tending to show suicide. In National Aid Life Ass'n v. Driskill, Tex.Civ.App., 138 S.W.2d 238, we had occasion to consider and briefly discuss, but found it there unnecessary to decide, the very interesting question of whether a presumption of fact, such as that under discussion, constitutes any evidence after the introduction of evidence contrary to the presumption, upon the issue to which the presumption relates. Since that decision the Supreme Court, through the Commission of Appeals, seems to have decided this very question. In Empire Gas & Fuel Co. v. Muegge, Tex.Com. App., 143 S.W.2d 763, 767, in the opinion of Judge Smedley, it is said: "It is settled in this state, and by the weight of authority elsewhere, that such presumption is not evidence but rather a rule of procedure or an 'administrative assumption' which 'vanishes' or is 'put to flight' when positive evidence to the contrary is introduced. * * *

"The presumption is a true presumption, which has been defined as 'a rule of law laid down by the courts which attaches to facts certain procedural consequences'. McCormack & Ray's Texas Law of Evidence, Sec. 32, p. 48. It places on the party against whom it operates the burden of producing evidence. *It is not evidence* and when met by rebutting proof is not to be weighed by the jury or treated by the jury as evidence in arriving at a verdict." (Italics ours.)

Under this authority, as applicable to the record here, the case stands thus: Beneficiary had the burden to plead and prove that Insured's death was by accidental means within the other limitations stated in the policy, and further, that it was not within the suicide exception to liability. Beneficiary testified that on the day of Insured's death she made a proof of loss as to another policy on the life of Insured in which she stated that suicide was the cause of Insured's death. Upon the trial she attempted to parry the effect of this voluntary statement by saying she was grieved and did not know what she was signing. She made no attempt, however, to go further and show that it was an untrue statement made as a mistake of fact. This testimony alone, we think, eliminated any operation or effect of the presumption relied upon. It, as least, raised the issues

that Insured committed suicide, that his death was not the result of accidental means. The verdict upon that issue being against the Beneficiary is conclusive, unless such result is to be avoided because of the action of the court sought to be reviewed under the other assignments of error.

A coroner's inquest was held over the body of Insured and the coroner made a report to the effect that death of Insured was suicide. Over objection of Beneficiary the report containing this statement was admitted in evidence. We think the statement was hearsay, not admissible under any of the exceptions to the rule excluding that character of evidence, and was, therefore, incompetent. Boehme v. Sovereign Camp, W. O. W., 98 Tex. 376, 84 S.W. 422, 4 Ann.Cas. 1019; Dent v. National Life & Acc. Co., Tex.Civ.App., 6 S.W.2d 195; Texas Emp. Ins. Ass'n v. Ritchie, Tex.Civ.App., 75 S.W.2d 942; Washington Nat. Ins. Co. v. Chavez, Tex. Civ.App., 106 S.W.2d 751; First States Life Co. v. Ransom, Tex.Civ.App., 110 S.W.2d 143.

We are also inclined to the view that there was error in admitting certified copy of the records of the State Registrar of Vital Statistics which consisted in part of the same statement of the coroner to the effect that the death was suicide. If it be assumed that such a statement was properly a part of the records, as to which it is provided in R.S.1925, Art. 4477, and according to rule 54a thereof, Vernon's Ann.Civ.St. art. 4477, rule 54a, that certified copies shall be admissible as prima facie evidence—in our opinion a very doubtful question—still it is clear that the statute does not provide for reporting such as a fact, but only as a probability. There is, it would seem, a material distinction between a fact as evidence and a mere probability of such fact.

We shall not dwell upon this question, nor attempt to set forth the reasons which incline us to the view stated. Assuming that the court erred in admitting both the report of the coroner and the certified copy from the State Registrar's records, we are of the opinion that according to the record, or so far as shown to the contrary, the judgment of the court was the only proper judgment warranted.

Considering all the evidence in the light most favorable to the Beneficiary, it no more reasonably warrants the inference that death of Insured was not suicide, than

488

it warrants the opposite inference that it was suicide. Evidence of the Beneficiary concurred with evidence of the Insurer to show suicide. On the other hand, the full effect of all the facts and circumstances, if any, tending to show an accidental death, rather than suicide could only form the basis of a mere guess or speculation. The evidence which we have held, or assumed, was illegal, did not conflict with any evidence showing that death was accidental, or was not suicide; but, on the contrary, was in accord therewith. There was simply an absence of any evidence of probative force that the death was by accidental means and not suicide. The court would have been warranted, we think, in instructing a verdict for the Insurer, wholly unaffected by the evidence improperly admitted.

For these reasons we reach the conclusion that the errors in the admission of testimony were harmless, that the judgment of the court below should be affirmed, and it is accordingly so ordered.