## UNIVERSAL LIFE & ACCIDENT INS. CO.
### v. SHAW.
### No. 13440.

Court of Civil Appeals of Texas. Dallas.
July 2, 1943.

Rehearing Denied July 23, 1943.

Storey, Sanders, Sherrill & Armstrong, of Dallas, for appellant.

Clifford Craig, of Dallas, for appellee.

LOONEY, Justice.

The parties will be referred to as in the court below. Charlie Shaw, a colored woman, sued the Universal Life & Accident Insurance Company to recover sick benefits of $7 per week, due her under provisions of defendant's policy. This is the third appeal of the case. The first was by plaintiff from an order dismissing her suit, which was reversed and application for writ dismissed. See Shaw v. Universal Life & Accident Ins. Co., Tex.Civ.App., 123 S.W.2d 738. The second appeal was by plaintiff from an adverse judgment non obstante veredicto. This judgment was also reversed by us and rendered for plaintiff on the verdict. See 153 S.W.2d 203. The Supreme Court granted a writ of error on the question of limitation involved but after due consideration, held as did this court on that question; however, reversed the judgments both of this court and the district court, and remanded the cause to the district court with instructions to enter judgment in favor of plaintiff on the verdict of the jury, with-

out prejudice to the right of the defendant to present a motion for a new trial and, if overruled, to prosecute an appeal therefrom. See Universal Life & Accident Ins. Co. v. Shaw, 139 Tex. 434, 163 S.W.2d 376, 378.

The published reports of former appeals disclose the nature of the suit and the questions of law discussed, both by this court and the Supreme Court, hence we will not repeat what has heretofore been said, only to the extent the same is pertinent to the points of error urged on this appeal. On proper submission, the jury found that, in July, 1931, a representative of the defendant took from plaintiff's possession the policy in question; that, at the time, she was confined to her bed, and had been in that condition for a period of four years and ten months; that all premiums on the policy had been paid to November 2, 1931; that defendant's manager denied liability on the policy in August, 1931, and thereafter refused to accept premiums from plaintiff, or to pay the accrued and accruing weekly benefits, and denied liability therefor. These findings, in our opinion, are sustained by evidence, and are adopted as our conclusions on the points indicated. In addition to these findings, the record discloses that for some time after plaintiff became disabled by reason of sickness, the defendant, recognizing its liability, paid weekly benefits, but later, through a representative, took from plaintiff's possession her policy and receipt book, on the pretext of making certain corrections, but, in reality, the purpose was to cancel and renounce the contract. Thereafter, plaintiff offered to pay defendant premiums accruing on the policy, but was informed by defendant's manager that the contract was at an end, that premiums would not be received, nor would any additional benefits be paid. On this point, Mr. J. O. McDonald, defendant's manager, testified that he was instructed by the company to cancel this policy; that he did not notify plaintiff in advance the policy would be canceled; that at the time of its cancellation, premiums thereon had been paid in advance for approximately thirteen weeks; as to the reason for the cancellation, this witness testified: "I know of my own knowledge why Universal Life & Accident Insurance Company wanted to get rid of Charlie Shaw's policy. She was a chronic claim-drawer, drawing claims all the time, and the financial condition of the Company at that time was very bad. That was the reason assigned to me for having the policy canceled."

The judgment rendered for plaintiff on the verdict and undisputed facts, as directed by the Supreme Court, was for weekly benefits at $7 per week that accrued prior to the institution of the suit, less the amount of weekly premiums accruing after November 2, 1931, plaintiff having paid all premiums up to that date prior to the cancellation in August, 1931; also for attorney's fees, penalty, interest and costs; after which, the court overruled defendant's motion for a new trial, to which it excepted, gave notice of and perfected this appeal.

Neither the correctness of the findings of the jury or any item of the judgment is challenged, nor does the defendant urge any point of error based upon the insufficiency of pleadings, or the failure of the court to submit certain issues. These observations are made at the outset, as we think the discussion has extended somewhat afield from the points of error assigned.

Points of error Nos. 1 and 2 urged by the defendant, although expressed in a number of words, yet, in our opinion, present but one contention, that is, because plaintiff failed to tender or offer to pay premiums after November 2, 1931 (the date to which she had paid premiums prior to the repudiation of the contract in August, 1931), the policy lapsed and became of no effect. This was one of defendant's contentions on the second appeal, to which the Supreme Court responded as follows: "The Insurance Company contends that, because plaintiff paid no premiums after November, 1931, the contract of insurance had lapsed; and, therefore, the insured may not recover for any benefits under the policy after it lapsed in December, 1931. The rule in this State is that the wrongful termination, cancellation, or forfeiture of an insurance policy by the insurer, accompanied by declarations by the insurer that it will refuse to accept premiums if tendered, will excuse the further tender of premiums or assessments by the insured; and such policy will not lapse for nonpayment of the premiums. (A number of authorities cited). The insurer issued its policy to the insured, and the insurer and the insured contracted to fulfill the obligations of such policy. The insurer did not have the right to cancel same so long as the insured complied with its provisions. It is undisputed that the insurer undertook to repudiate its

obligation and cancel its policy when the premiums had been paid thereon. The insured was to pay a certain weekly premium, and in case of disability the insurer agreed to pay the insured a certain weekly benefit. We think the object of the policy was to give to the insured a continuing security, and that the contract is divisible. * * *" In this connection, the Supreme Court also said, we quote: "The insurer unconditionally and positively repudiated the policy, and refused to permit the insured to make further premium payments thereunder. This action released the insured from making further tender of premiums, if the policy required her to pay them, or from offering to make them. Yet, if the insured is entitled to collect the benefits specified in the policy, the insurer is entitled to credit such payments, if the policy requires such premiums to be paid, on the weekly benefits due under the policy. * * *" As heretofore shown, the trial court gave judgment in favor of plaintiff for the amount of weekly benefits that accrued within the four-year period prior to the institution of suit, less the amount of weekly premiums accruing after November 2, 1931. So, in view of the undisputed facts and applicable rules of law, as announced by the Supreme Court, we conclude that the points of error under consideration should be and are overruled.

■ In its third point of error, defendant complains of the giving of Special Issue No. 1, on the ground that same was duplicitous, that is, submitted two ultimate issues, and was upon the weight of evidence. Issue No. 1 required the jury to find from the preponderance of evidence, the date the policy of insurance was taken from plaintiff's possession by an employee of the defendant, to which the jury answered, "July, 1931." In view of the undisputed evidence, we think the submission of this issue was really superfluous. The defendant's own manager testified that the policy was taken up and canceled on orders of the defendant, and that, at the time the cancellation took place, plaintiff had paid premiums in advance for approximately thirteen weeks.

■ In points of error Nos. 4 and 5, defendant complains of the giving of Special Issues Nos. 2 and 3, over objections, to the effect that the same required evidentiary findings and not ultimate facts. Issue No. 2 asked the jury to find from a preponderance of the evidence whether, on the date the policy was taken from the possession of the plaintiff, she "was necessarily confined to bed?" to which the jury answered "Yes." And this was followed by Special Issue No. 3, asking the jury to find from a preponderance of the evidence the period of time, if any, plaintiff was continuously necessarily confined to her bed, to which the jury answered, "4 years, 10 months, or 58 months." The answers of the jury, in our opinion, simply reflected the undisputed facts, the correctness of which has not been challenged by the defendant. However, in view of the provisions of the policy, reading: "Benefits will be paid for each day that the insured is by reason of illness necessarily confined to bed and * * * disabled from performing work of any nature * * *," we do not think the issues were evidentiary in nature, but required the jury to find ultimate and controlling facts.

After due consideration, failing to find merit in defendant's points of error, they are overruled and the judgment of the court below is affirmed.

Affirmed.