## UNION CENTRAL LIFE INS. CO. v. BOULWARE.

### No. 4703.

Court of Civil Appeals of Texas. Beaumont.
March 15, 1951.

Rehearing Denied April 25, 1951.

Vinson, Elkins & Weems, Houston,
Pitts & Liles, Conroe, for appellant.

W. C. McClain, Conroe, for appellee.

R. L. MURRAY, Justice.

This is an appeal from a judgment in the district court of Montgomery County in favor of Mrs. Narcissa W. Boulware, appellee, against The Union Central Life Insurance Company, appellant, upon a life insurance policy on the life of Cecil C. Boulware, now deceased. The insurance policy provided for payment of $1,000 to Mrs. Boulware upon the death of the insured, Cecil C. Boulware, plus an additional $1,000 if the death of the insured should result directly, independently and exclusively of all other causes from bodily injury effected solely through accidental, external and violent means, provided that such death of the insured was not a risk assumed if it resulted directly or indirectly from any bodily or mental disease or infirmity. Mr. Boulware died July 13, 1949, and the insurance company paid the first $1,000 sum, but payment was refused of the additional $1,000 provided in the policy for double indemnity in case of death by accidental, external and violent means. This suit was for such additional $1,000. The case was tried to a jury and the jury

in its verdict found that Mr. Boulware unexpectedly suffered a heat stroke on July 13, 1949; that his death resulted directly, independently and exclusively of all other causes from such heat stroke; that his death did not result directly or indirectly from any bodily or mental disease or infirmity; that it did not result directly or indirectly from bacteria infection; that it did not result in part from heart failure; that Mr. Boulware prior to his death did not suffer from heart trouble or disease; that prior to his death he had not had a goiter; that a reasonable attorneys' fee for services performed and to be performed in this suit for Mrs. Boulware was $500.

Upon the verdict, stipulations and admissions of fact the court entered judgment in favor of the appellee against the appellant for the sum of $1,620, which included $1,000 due under the policy $120 as a penalty and $500 as attorneys' fees.

The appellant's first four points are that (1) death from heat stroke was not a risk assumed in the policy of insurance issued; (2) even though the death of Mr. Boulware was the result of a heat stroke, the death did not result from bodily injury effected solely through accidental, external and violent means, within the double indemnity provisions of the policy sued on; (3) appellee wholly failed to discharge her burden of proof, there being no competent proof that the death of Cecil C. Boulware was not caused in part at least by bodily or mental disease or infirmity; (4) the trial court erred in instructing the jury that if a person unexpectedly suffered a heat stroke, same was not to be considered as being any bodily or mental disease or infirmity.

The double indemnity provisions of the insurance policy contained the following:

"If the death of the insured shall have resulted directly, independently and exclusively of all other causes from bodily injuries effected solely through accidental, external and violent means * * * the amount payable under said policy shall be increased as follows: * * * an amount equal to the face of the policy shall be paid * * *."

"Death is not a risk hereby assumed if it results directly or indirectly (c) from any bodily or mental disease or infirmity or from bacterial infection other than infection occurring simultaneously with and in consequence of a wrong caused by accidental, external and violent means."

■ Briefly summarized, the evidence in regard to the circumstances surrounding Mr. Boulware's death is as follows: On the Monday morning preceding the Wednesday on which he died he was riding horseback tending his cattle, riding through thick brush in the hot sun. On this day his face became red and he leaned over from his horse and vomited five or six times, he seemed confused and upset late that evening. The following day he was out in the sun most of the day building crates and drenching sheep. He was pale and complained of feeling tired and weak. That night he complained of pains in his stomach and ate no supper. On the following day he was out riding after his cattle during the morning and came home about noon, at which time he had his son attend to his horse for him, although he usually did this himself. He lay down on a couch in his house and did not eat any lunch saying he was too hot and tired. That afternoon he drove his son to a Scout camp in a truck, unloading some equipment on it and returned home during which time he was silent and his face was flushed. After he returned home he went upstairs to his room and no one saw him from that time until he was discovered dead about three hours later. All three days were hot July summer days with the temperature over 100 degrees. He was a rancher and farmer and his usual duties included "riding after cattle" and general farm chores. An autopsy was performed the day following the day of his death by two doctors, both pathologists at Herman Hospital in Houston. The testimony of both doctors gives in detail their findings upon the autopsy. Dr. Keiller testified that from her findings there was no evidence of a heart attack and she was looking especially for evidence of a heart attack; that her conclusion was that Cecil C. Boulware died of a heat stroke; that in her opinion the death of Cecil C. Boulware resulted solely, directly and independently of all other causes from heat stroke. Dr. Abbott, the other doctor who performed the autopsy also testified that in his opinion Mr. Boulware died as a result of a heat stroke; that he examined the thyroid glands and found no evidence of a goiter and that a heat stroke was the immediate cause of his death; that there was no other disease or anything contributing to his death other than heat stroke. There was other medical testimony concurring with the opinion of Drs. Keiller and Abbott. The evidence was sufficient to support the findings of the jury that Mr. Boulware's death was the result of a heat stroke, that it resulted directly, independently and exclusively of all other causes of a heat stroke and did not result directly or indirectly from any bodily disease or infirmity or bacterial infection; that it did not result in part from heart failure; that prior to his death he did not have a goiter.

The next question for consideration is the appellant's contention that death from heat stroke was not a risk assumed in the accidental death provisions of its policy issued on the life of Mr. Boulware. It says that a heat stroke is a disease and quotes the following definition of the word "disease" from Webster's New International Dictionary as follows: "Pathologically, disease is an alteration of the human body * * *, or of some of its organs or parts interrupting or disturbing the performance of the vital functions, or a particular instance or case of this; any departure from the state of health presenting marked symptoms; also a specific kind of such alteration; a particular ailment having specific symptoms or causes."

Dr. Abbott also testified that this was a good definition of the word disease and was asked the question, "And disease has been defined, has it not, and is it not considered as 'a condition in which bodily health is seriously attacked deranged or impaired; sickness; illness as is mortality from disease a particular form or instance of such disease; a malady; an ailment; as infectious disease' "? He answered, "Yes, definitions in medicine are often-

times extremely hard to trail down because one person's definition means one thing and to another person it means another. I think this is as good a general description as you can find."

On further cross-examination by appellant's counsel Dr. Abbott testified, as quoted in appellant's brief:

"Q. But a heat stroke is considered as an illness just as Webster defines it, is it not? A. You want my opinion?

"Q. Yes. Is that generally so considered? It is a disease is it not? A. Yes.
* * *

"Q. Heat stroke comes under disease? A. Yes.

"Q. And that is a common understanding of the word disease? A. Yes."

Dr. Keiller, in her testimony, also described heat stroke as follows: "Heat stroke is also called heat hyperpyrexia. It is the result of exposure to excessive temperatures, with or without exposure to sun, and with an increased humidity in some cases. The effect is an alteration in the heat regulating mechanism so that heat is not dissipated from the body in the way that it should be. The result of that is that sometimes changes take place in the body and the nervous system, perhaps primarily first, and then in other structures. There are certain alterations in the nerve cells."

Dr. Kelsey, witness for the appellant, in his testimony, said that he considered heat stroke a disease. The appellant in its brief copied the above testimony from the testimony of Dr. Abbott, omitting portions of his testimony where the asterisks are shown. From the statement of facts it is found that the witnesses' complete answers to the questions of appellant's counsel were as follows:

"Q. A heat stroke is considered as an illness just as Webster defines it, is it not? A. You want my opinion?

"Q. Yes. Is that generally so considered? It is a disease, it is not? A. Yes. I would assume so, yes. Just like being stabbed by a knife is a disease, if you define it by that definition.

"Q. If you define it by that definition, heat stroke comes under disease? A. Yes."

The Texas courts have rejected all of the contentions made by the appellant that heat stroke is a disease and not a bodily injury. Bryant v. Continental Casualty Co., 107 Tex. 582, 182 S.W. 673; Guthrie v. Texas Employers Ins. Ass'n, 146 Tex. 89, 203 S.W.2d 775; American General Ins. Co. v. Webster et al., Tex. Civ.App., 118 S.W.2d 1082; American National Ins. Co. v. Fox, Tex.Civ.App., 184 S.W.2d 937; American National Ins. Co. v. Bennie, Tex.Civ.App., 106 S.W.2d 336; Metropolitan Life Ins. Co. v. Funderburk, Tex.Civ.App., 81 S.W.2d 132. The appellant argues that although in the Funderburk, Bennie, and Fox cases, supra, it is held that heat stroke is a bodily injury within the meaning of an insurance policy providing for double indemnity, in none of these cases does it appear that the policy contained a specific reservation and exception excepting death resulting from bodily or mental disease or infirmity. In the Fox case, supra, the court's opinion notes that the double indemnity provision of that policy excluded liability where the injury is received from physical or mental infirmity. We are unable to see any difference between the cases cited above and the facts in this case. The opinions contain thorough discussions of the principles involved and no good purpose would be served by quoting from them here. They establish without doubt that the rule in the Texas courts is that heat stroke is not a disease, but a bodily injury within the meaning of an insurance policy providing for liability in cases of accidental death and these points are overruled. For these reasons, also, the instruction by the trial court to the jury that a heat stroke suffered unexpectedly could not be considered as a disease was not error. Appellant makes the novel statement in its brief that such instruction by the trial court did violence to the undisputed evidence in this case, "regardless of what may have been the evidence in some other case and notwithstanding what some member or members

of the Judicial branch of the government may have declared was his or their understanding of the nature of heat stroke or disease, or the meaning given to such words or terms by the 'parties to an insurance contract." However, we believe that such declarations when contained in the opinions of the Supreme Court are binding upon us and when so stated they become the law of the State.

Appellant's 5th point is that the trial court erred in not submitting its requested Special Issue, which would have inquired of the jury whether at the time of the issuance of the insurance policy both Mr. Boulware and the insurance company understood that the words "bodily or mental disease or infirmity" did not include heat stroke. We overrule this point. We find no evidence in the record which raises the issue requested. The insurance policy in this case was issued November 2, 1938, and the case of Bryant v. Continental Casualty Co. was decided by the Supreme Court of Texas on February 14, 1916. There is no evidence that Mr. Boulware had any understanding of the meaning of this portion of the policy and we think it would have been immaterial to this controversy if he had. There is a letter in evidence from the manager of the appellant's agency in Houston to counsel for appellee in which the manager states that "the company does not question the Texas statute and if conclusive evidence had been furnished that death resulted from heat stroke, the company would admit its liability."

By its 6th point the appellant complains of the trial court's action in refusing to admit in evidence, when offered by the appellant, a duly authenticated copy of the record of death of Cecil C. Boulware from the Bureau of Vital Statistics of the State of Texas. This record states that Mr. Boulware died July 13, 1949, that inquest was held with no doctor attending and that the cause of death was heart failure. This instrument was offered by the appellant for all purposes. The appellee objected to the offering of said certificate "for the purpose of showing cause of death, because it showed on its face that it was prepared by the coroner who was not shown to be qualified to express an opinion, it not being shown that he was a physician or a pathologist, nor did it show that he made any examination of the body of such a nature that he could form and express an opinion as to the cause of death; that the coroner had not been called to testify and had he been, such testimony would not have been admissible," etc. We think it well settled that it was not error for the trial court to exclude this death certificate. There was no dispute over the fact that Mr. Boulware was dead. It is apparent from the record that it was offered by appellant in an attempt to establish that the cause of death was heart failure, and it was not admissible for that purpose. Boehme v. Sovereign Camp, W.O.W., 98 Tex. 376, 84 S.W. 422; Texas Employers Ins. Co. v. Ritchie, Tex.Civ.App., 75 S.W.2d 942; Service Mutual Ins. Co. of Texas v. Banke, Tex.Civ.App., 155 S.W.2d 668; Turner et al. v. Hodges Estate, Tex.Civ.App., 219 S.W.2d 522.

The appellant's 7th point complains of the wording of Special Issue No. 2 of the court's charge to the jury. This issue read as follows: "Do you find from a preponderance of the evidence that the death of Cecil C. Boulware resulted directly, independently and exclusively of all other causes from a heat stroke he sustained, if you have found he did sustain a heat stroke?" Appellant says this issue was duplicitous and multifarious in that it submitted in one issue three separate conditions. The issue was submitted in the actual language of the policy itself and on the authority of Universal Life & Accident Ins. Co. v. Shaw, Tex.Civ.App., 173 S.W.2d 501 we overrule this point.

Appellant's 8th point is as follows: "The trial court erred in submitting Special Issue No. 12 on attorneys' fees." The appellant argues under this point at length that there was testimony in the record of a written contract between appellee and her attorney by which he had an assignment of one-half of the sum recovered and the appellee testified that although such was their written agreement, their actual agreement was that whatever attor-

neys' fees the jury found proper "that was to go toward the attorneys' fee, and should such amount be less than one-half of the face amount of the policy, appellee was to make such fee up to one-half of the face amount of the policy." We do not find that this point presents any error. The point itself complains of "submitting Special Issue No. 12 on attorneys' fees." There was evidence in the record by a licensed attorney that $500 was a fair and reasonable fee in the case, that due demand in writing was made for payment of the policy and attorneys' fees in such cases are allowed by Article 4736, Vernon's Civil Statutes of Texas Annotated. We cannot regard this point as raising objection to the introduction of evidence. The trial court was warranted in submitting the issue and this point is overruled.

 By its 9th point appellant says the trial court erred in permitting appellee to reopen her case and offer further testimony after both parties had closed their cases and each had offered rebuttal testimony. From the statement of facts it is found that after the appellee had finished the testimony in her main case and after appellant had finished its testimony the appellee introduced rebuttal testimony and rested. The appellant then called Dr. Anderson to the witness stand on rebuttal. He testified at length, giving his opinion as to the cause of the death of the deceased. When his testimony was completed the appellant rested. Appellee then called as a witness Dr. Wilkins. Appellant objected to permitting him to testify on the following grounds: "The record reflects that the plaintiff has rested his case in rebuttal, further reflects that the defendant has rested its case in rebuttal. I would like the record to show that Dr. Wilkins was in the courtroom prior to the time Dr. Anderson went on the stand; that he has been in the courtroom during all the time; that he could have testified had the plaintiff had not said he was resting in rebuttal, prior to the time Dr. Anderson gave his testimony; that by permitting this witness to now testify would be to deprive the defendant of a valuable right, of the right to close in rebuttal as is prescribed by the Rules of Civil Procedure of the State of Texas; that the defendant has a right to close in rebuttal, and to call its witness in rebuttal after the plaintiff has finished its rebuttal and thereby be given an opportunity to rebut any testimony introduced by the plaintiff in rebuttal." The court overruled the objection and Dr. Wilkins' testimony was given. Thereafter appellant was permitted to reopen its case for the purpose of offering in evidence the death certificate discussed above under point No. 6. We think it well settled that the question of reopening a case and hearing additional testimony from either or both parties is left to the discretion of the trial judge. Binford v. Snyder, 144 Tex. 134, 189 S.W.2d 471; Swanson et al. v. Fort Worth Transit Co., Tex.Civ.App., 209 S.W.2d 772. Rule 270, Texas Rules of Civil Procedure. We find no abuse of the trial court's discretion in the proceedings above set out and this point is overruled.

The judgment of the trial court is affirmed.