RATH, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

(No. 794—Decided May 21, 1954.)

*Mr. Leander P. Zwick, Jr.,* and *Mr. Harold E. Gottlieb,* for appellant.

*Mr. C. William O'Neill,* attorney general, *Mr. Paul Tague, Jr.,* and *Mr. James Videan,* for appellee.

PUTNAM, P. J. This action arose on appeal from an order of the Industrial Commission denying the plaintiff, Esther Rath, the right to participate in the Workmen's Compensation

Fund for the reason that her husband's death was not proximately related to an injury sustained in the course of and arising out of his employment with the Hazel-Atlas Glass Company.

The issues having been joined by petition and answer, the cause came to trial before a duly impanelled and sworn jury. At the conclusion of the plaintiff's case, the defendant moved the court to direct a verdict in its favor. The trial court sustained the defendant's motion and entered judgment for the defendant.

This appeal on questions of law results. The assignments of error as argued to this court are as follows:

1. The court erred in directing a verdict in favor of the Industrial Commission at the end of the plaintiff's case.

2. The court erred in sustaining objections to the hypothetical questions propounded to the plaintiff's expert medical witnesses.

3. The court erred in sustaining objection to the admission of the death certificate in evidence.

4. The court erred in ruling that the cause of death shown on the death certificate is not competent evidence to show the cause of death.

The issues, as stated by the appellant in this case, are as follows:

Is a certificate of death duly filed with the Registrar of the Bureau of Vital Statistics admissible in evidence to show the medical cause of death? Did the plaintiff present some evidence showing an accidental injury within the meaning of the Workmen's Compensation Act so as to require the case to be submitted to the jury?

The facts in this case are briefly as follows:

Theodore Rath, the decedent, was 35 years old, married and had two children. His wife, Esther Rath, is the claimant. Rath had worked for the Hazel-Atlas Glass Company at Zanesville as an operator of a bottle-making machine for about 17 years. On July 1, 1948, he reported for work, as usual, at 6 a. m. Shortly thereafter, he got a pint of milk and some other food, presumably for breakfast. Shortly after he consumed this food, he felt sick and vomited. He continued at work until about 8:30, when he complained to his brother, who was operating an

adjacent machine, that he was not feeling well. He called a replacement for his machine and went to the dispensary. He asked the nurse in charge for some soda, which she gave him. He drank this and then asked for a glass of water. The nurse turned to get a glass of water and as she did she noticed that Rath slumped in his chair. She ran to him and supported him, and called for help. He was placed on a cot. Immediately thereafter, the company doctor, Dr. Gaudy, was called; he arrived within ten or fifteen minutes. Rath was dead when the doctor arrived. The nurse stated that Rath lived only a few minutes after he was placed on the cot. The doctor examined him, took the statement of the nurse and then went to see his wife, the claimant, Esther Rath. He had a conversation with her in the presence of Rath's brother. At that time, Esther Rath told him that Rath had had pains in his chest before and had taken soda to relieve it. She said she had advised him to go to a doctor for a check up, but he had refused. Thereafter, Dr. Gaudy signed a death certificate in which he stated that the cause of death was "coronary thrombosis," "duration 10 minutes." The medical certificate also stated, in answer to question 21, "I hereby certify that I attended the deceased found dead on arrival and that death occurred on the date and hour stated above. Immediate cause of death coronary thrombosis duration 10 minutes." The other parts of the question were unanswered. There was no autopsy. Question 22 was not answered. The evidence also tends to show that between the hours of 6:30 and 8:30 a. m. on this date the temperature around Zanesville was from 61 to 72 degrees, and that the temperature in the factory at the place where the decedent was working was from 10 to 15 degrees higher than the outside temperature. The job of the deceased consisted of molding glass bottles in forms from molten glass which came into the molds from a tank several feet away from the mold. It was the heat from this tank and from the molten glass which raised the temperature within the factory higher than that outside.

The first contention on this appeal is that the hypothetical question propounded to the doctors was incompetent because it contained the assumption taken from the death certificate that the cause of death was coronary thrombosis. There is no other evidence as to the cause of death.

The death certificate itself had been offered in evidence but was rejected. Its rejection by the trial judge was based upon the holding in the case of *Carson* v. *Metropolitan Life Ins. Co.*, 156 Ohio St., 104, 100 N. E. (2d), 197, 28 A. L. R. (2d), 344. The appellant claims that the death certificate was admissible under the holding of the Supreme Court in the case of *Perry* v. *Industrial Commission*, 160 Ohio St., 520, 117 N. E. (2d), 34. These cases must be resolved in the light of Section 1261-66, General Code (Section 3705.05, Revised Code), which provides in part:

"The director of health, or person authorized by him, shall upon request and upon the payment of a fee of fifty cents supply to any applicant a certified copy of the original certificate of any birth, death, or stillbirth, registered according to law. Such certified copy of such original certificate of birth, death or stillbirth shall be prima facie evidence in all courts and places of the facts therein stated."

In the *Carson case, supra,* the court held that a statement in the death certificate that death was from suicide was not competent evidence to establish death by such means. This conclusion obviously was based upon the ground that such a statement was not a statement of fact but of opinion. In the *Perry case, supra,* the court held that a statement in the death certificate that the immediate cause of death was coronary sclerosis, which for all practical purposes is the same as coronary thrombosis, as in this case, was a statement of fact and not an opinion and was, consequently, competent. The only difference between the *Perry case* and the instant case is that in the *Perry case* the certifying doctor had been in attendance upon the patient prior to his death. This fact is seized upon by the appellee in this case to distinguish it, and as a basis for the argument that the doctor's certification in the instant case is based upon hearsay and is, consequently, the statement of an opinion and not of a fact. This is the question we must resolve in the first instance.

It is our judgment that the appellee's contention cannot be sustained, and we hold, following the *Perry case, supra,* that the death certificate, as to the cause of death, was competent under the facts in this case and should have been admitted into

evidence. This conclusion is based upon the following considerations, among others:

In the case of suicide the question is not whether a gunshot wound or a strangulation or a drowning or death under the wheels of a railroad train was the immediate cause of death, but as to whether the particular individual willfully caused the same to be done. This is a question of a state of mind and of a motivating cause. To the writer of this opinion, this involves a guess of the mental process of the decedent and, in accordance with the Supreme Court's decision, becomes a matter of opinion based on many facts unrelated to the field of medicine. However, when a doctor states that the cause of death is due to a gunshot wound, tuberculosis, a rupturing of a blood vessel in the brain, commonly known as a stroke, coronary thrombosis, heat exhaustion, hemorrhage, or any other *primary* cause of death, such statement is a statement of a fact and not of opinion. It is true that this statement of fact results from an opinion formed from many sources. The diagnosis may be from considerations arrived at from long treatment; it may be from short treatment and a history of the case; it may also be from an examination of a body after death. It would not be necessary in all cases to hold an autopsy. Physical appearance and previous symptoms might well enter into the ultimate conclusion. In any event, however, it is a fact stated by the doctor which has to do with a primary physical cause and not with a mental motivation. If we were to take the appellee's theory, it is difficult for this writer to see how we ever could implement the legislative mandate in Section 3705.05, Revised Code, regarding any statement by a doctor as to the cause of death. It must be remembered that this is only prima facie evidence. In many cases diagnoses differ, and it could be that upon a trial of an ultimate fact as to the cause of death in many obscure cases it might be determined that the cause of death was different from that given in the death certificate. As stated above, this death certificate, under the facts in this case, was competent evidence as to the cause of death and it should have been admitted.

The second question involved is whether there was any medical evidence, and medical evidence was necessary in this

case, to show that there was any direct proximate causal relationship between the occupation of the decedent and his death, and whether his death was accidental within the meaning of the statute. We have heretofore determined in the preceding paragraph that the hypothetical question propounded to the doctors for the claimant was not incompetent because it contained therein the assumption that death was due to coronary thrombosis. The further question then presents itself as to whether the hypothetical question was incompetent because it was improperly framed in that it did not contain the query as to whether there was a direct or proximate relationship. This court in reviewing the decisions of the lower court in this county has heretofore held that the hypothetical question must contain either the word, "proximate" or "direct," as modifying the word, "causal." (See the case of *Fox* v. *Industrial Commission, ante,* 245.) In the instant case the medical testimony for the claimant, as far as the testimony of Dr. Rusoff is concerned, violates this rule; and for that reason alone the lower court was correct in ruling out his testimony. However, the other medical testimony of the claimant, that of Dr. Harry C. Powelson, shows that the hypothetical question propounded to him ended as follows:

"Doctor assuming these facts to be true, do you have an opinion as to whether there is or is not a direct causal relationship between the incident described as occurring just preceding the death of Mr. Rath on July 1, 1948, and his death from the causes stated, which occurred as described above?"

We hold that this question does not violate the rule pronounced by this court in the *Fox case, supra.* Consequently, it follows that there was some medical evidence in this case of a competent nature to go to the jury as to that question in issue.

The other question presented is whether this cause of death, coronary thrombosis, could have been induced and caused by the heat to which the decedent was subjected. Under the doctrine announced in *Malone* v. *Industrial Commission,* 140 Ohio St., 292, 43 N. E. (2d), 266, it is our judgment that this becomes a question of fact for the jury. The majority of this court has been fairly strict in following the pronouncements of the Supreme Court in the case of *Nelson* v. *Industrial Commission,* 150

Ohio St., 1, 80 N. E. (2d), 430. However, in the instant case, there is a disputed question of fact as to whether the decedent ever before had symptoms of degenerative arterial disease. There is also a disputed question of fact as to whether previous degenerative arterial disease is a prerequisite to the onset of a coronary thrombosis. While the writer of this opinion has definite ideas upon the the subject, that does not, under the circumstances in this case, obviate the necessity of a trial court presenting that proposition to a jury under proper instructions.

It can only be observed in conclusion, as has been said many times before, that a decision on a directed verdict is different than a decision setting aside a verdict on a motion for a new trial on the weight of the evidence.

Under the reasoning and conclusions above set forth, the trial court was in error in directing a verdict in this case and the same should have been presented to the jury. However, the writer has grave doubts as to whether, under the medical testimony of the appellee as proffered in this case, conditionally, a verdict for the plaintiff could be sustained.

Specifically, all the grounds of error complained of by the appellant are sustained except as to the medical testimony of Dr. Rusoff, which was properly excluded. The judgment is reversed, and the cause is remanded for further proceedings in accordance with law.

*Judgment reversed and cause remanded.*

MONTGOMERY and McCLINTOCK, JJ., concur.