## 35245. FAMILY FUND LIFE INSURANCE COMPANY *v.* WILEY.

GARDNER, P. J. 1. Wessie Dell Wiley (whom we shall call the plaintiff) brought an action against Family Fund Life Insurance Company (hereinafter called the defendant) on an insurance policy, generally known as a double-indemnity policy. The policy required the plaintiff to show "That the death of the insured resulted directly and independently of all other cause of bodily injuries sustained through violent, external and accidental means and not directly or indirectly from bodily infirmity or disease in any form." The only question is whether or not the evidence is sufficient to sustain the verdict in favor of the plaintiff. It is not questioned that, if the evidence showed that the insured came to his death by accidental suffocation, the plaintiff was entitled to recover $450 under the provisions of the policy. The ultimate burden was on the plaintiff to show that the insured died from suffocation. The jury returned a verdict in favor of the plaintiff. The defendant filed a motion for a new trial on the statutory grounds only.

2. The plaintiff introduced the death certificate, which showed that the coroner assigned accidental suffocation as the cause of death. This made out a prima facie case on behalf of the plaintiff. See *Woodruff v. American Mutual Insurance Co.,* 67 Ga. App. 554, 560 (21 S. E. 2d 298). See also Code § 88-1212. Paragraph 4 of the petition alleged "Petitioner shows that the death of said James L. Wiley did occur on the 31st day of January, 1951, solely through violent, external, and accidental means within the meaning of said policy, in this wise: deceased, James L. Wiley, did on the said date lie down on the seat cushion of a pickup truck, and while asleep therein, did press his mouth and nostrils tightly against said cushion and the back cushion of said truck and into the crevice therebetween, so that ·deceased became unable to breathe, his supply of oxygen being cut off because of the position of his mouth and nostrils as alleged, from which deceased did become suffocated, and did then and there die." The coroner, introduced as a witness, testified regarding the death certificate and testified that the doctor who had been treating the insured for approximately five months prior to the death of the insured, testified that the cause of the death of the insured was suffocation. The coroner testified that because of the testimony of the doctor, he (the coroner) stated in the certificate that the death was caused by suffocation. Doctor Holland, the physician above mentioned, was sworn as a witness at the trial. He testified that the insured was a patient of the witness. He described the position of the body of the deceased in the vehicle, as the physician found the body when he arrived at the vehicle. He testified that in his opinion the deceased died from suffocation. He further testified that at the time the insured died he was suffering from advanced pulmonary tuberculosis and that the insured was known as a diabetic mellilus; that the insured could have died from a coma induced by diabetes. There was evidence to the effect that on the night prior to the death of the insured he drank some whisky with a friend. This friend testified that the insured could walk, but that the friend assisted the insured into the vehicle and then closed the windows of the vehicle. On cross-examination the doctor testified that the insured could have died from a number of things.

He testified: "He could have died from an atom bomb. As a medical expert I think it was suffocation from the way I saw it without any other detailed study being made."

3. Counsel for the defendant call our attention to the rule that where facts are equally consistent with either of two theories they prove neither. There are many decisions of the Supreme Court and this court cited by the defendant. We see no necessity of enumerating them here. Under all the facts and circumstances of this case, the jury were authorized to return a verdict for the plaintiff.

The court did not err in denying the motion for a new trial.

*Judgment affirmed. Townsend and Carlisle, JJ., concur.*

DECIDED SEPTEMBER 27, 1954—ADHERED TO ON REHEARING DECEMBER 3, 1954.

*Wm. F. Buchanan, Stone & Stone,* for plaintiff in error.
*P. Z. Geer, Phillip Sheffield,* contra.

ON REHEARING.

When this case was in this court for decision on the question of whether the petition stated a cause of action as against a general demurrer (*Wiley* v. *Family Fund Life Insurance Co.,* 88 *Ga. App.* 381, 76 S. E. 2d 733), this court, in setting out the pleadings, said: "By an amendment, the plaintiff attached to her petition a copy of the insured's death certificate, certified by the Director of the State Department of Public Health and also signed by the Coroner of Early County, which stated, under the heading 'Cause of Death,' that the condition or complication directly leading to death was 'Accidental Suffocation.' The defendant demurred to so much of the petition as sought to recover on the double-indemnity feature of the policy sued on, on the ground that the petition did not allege facts showing that the death of James L. Wiley resulted directly and independently of all other causes, from bodily injuries sustained solely through violent, external, and accidental means. The court sustained the demurrers and struck the portions of the petition which referred to the death as accidental. The plaintiff excepted pendente lite to this ruling, and also excepted to the final judgment in her favor for the face amount of the policy."

The full opinion of the court is as follows: " 'In order for a plaintiff to recover under a double-indemnity provision of an insurance policy for death resulting, independently of all other causes, from bodily injuries caused solely by external violent,

and accidental means, it is incumbent upon him to show that in the act which preceded the injury alleged to have caused the death of the insured something "unforeseen, unexpected, or unusual occurred." *Fulton* v. *Metropolitan Insurance Co.*, 19 *Ga. App.* 127 (2) (91 S. E. 228); *Johnson* v. *Aetna Life Insurance Co.*, 24 *Ga. App.* 431 (101 S. E. 134); *Continental Casualty Co.* v. *Rucker*, 50 *Ga. App.* 694, 695 (179 S. E. 269); *American National Insurance Co.* v. *Chappelear*, 51 *Ga. App.* 826, 829 (181 S. E. 808); *Commercial Casualty Insurance Co.* v. *Mathews*, 57 *Ga. App.* 446, 452 (195 S. E. 887); *Atlanta Accident Asso.* v. *Alexander*, 104 *Ga.* 709 (30 S. E. 939); United States Mutual Accident Asso. *v.* Barry, 131 U. S. 100 (9 Sup. Ct. 755, 33 L. ed. 60).' *Green* v. *Metropolitan Life Ins. Co.*, 67 *Ga. App.* 520, 525 (21 S. E. 2d 465). This principle of law is well settled, and a proper determination of the question here presented depends upon the application of this law to the facts as alleged in the petition.

"It is alleged here that the insured, while asleep in a pickup truck, pressed his mouth and nostrils so tightly into the crevice between the seat and back cushions of the truck that he was unable to breathe, his supply of oxygen was cut off, and he died of suffocation. This was an involuntary act on the part of the insured, and it was unforeseen, unexpected, and unusual. Counsel for the defendant contends in his brief, not that the occurrence preceding the death was unusual, unforeseen, and not to be expected, but that this court should judicially notice that, with the line of one's mouth at right angles to the crevice between the cushions, 'suffocation is *absolutely impossible*, unless the human head be constructed like the head of an ant-eater.' But a demurrer admits the truth of all properly pleaded allegations in the petition (Code § 81-304); and whether or not it was physically impossible for the insured to die in the manner alleged would be a question for a jury's determination, under the pleadings and evidence. The allegations are sufficient to raise a jury question as to whether the means by which the insured met his death were unusual, unforeseen, and unexpected, and hence accidental. The insured's involuntarily pressing his mouth and nose into the crevice between the seat and back cushions brought about the application of external force sufficient to close his

mouth and nostrils, thereby suffocating him, according to the allegations of the petition. The petition does not show that the insured was guilty of any conduct that would take the incident out of the category of death by accidental means.

"The petition showed that the death of the insured came within the double-indemnity provisions of the policy, and the court erred in sustaining the demurrers to the allegations seeking a recovery thereunder."

Code (Ann. Supp.) § 88-1118 (Ga. L. 1945, pp. 236, 242) reads: "Certificates filed under the provisions of this Chapter shall be prima facie evidence of the facts stated therein." We have studied this case carefully on rehearing, and we are of the opinion that the decision rendered when the case was here before is the law of the case. When the death certificate was introduced, it made out a prima facie case for the plaintiff.

Many cases are called to our attention by counsel for the plaintiff to the effect that the plaintiff relies on circumstantial evidence to show that an accident caused the death of the insured and that, when the plaintiff relies on such circumstances to prove a fact such as an accident causing death, he cannot base one inference upon another inference to prove an accidental death. The plaintiff, as we have stated hereinabove, introduced the death certificate, which gave the cause of death as accidental suffocation. This is not an inference upon an inference. It is direct evidence.

The defendant introduced no witness or other evidence, but relied on facts which he brought out by cross-examination of witnesses for the plaintiff.

We do not construe the evidence in accordance with the views of counsel for the defendant, that is, that the circumstances were based on an inference upon an inference. It must be kept in mind that, as this court stated when the case was here before, it is a jury question, and the jury determined that the evidence introduced was sufficient to sustain the verdict. The trial court approved the finding of the jury. We think correctly so.

*Judgment adhered to on rehearing. Townsend and Carlisle, JJ., concur.*