Virginia K. LYNDE, now Virginia K. Gordon (Plaintiff) Respondent,

v.

WESTERN & SOUTHERN LIFE INSUR-ANCE COMPANY, a Corporation (Defendant) Appellant.

No. 29486.

St. Louis Court of Appeals.

Missouri.

July 3, 1956.

Motion for Rehearing or for Transfer to Supreme Court Denied Sept. 14, 1956.

148 

Fordyce, Mayne, Hartman, Renard & Stribling, William W. Sleater, Jr., St. Louis, for appellant.

Charles E. Gray, Marvin L. Dinger, St. Louis, Mo., for respondent.

WOLFE, Commissioner.

This is an action on two life insurance policies to recover on provisions contained in them relating to accidental death. A jury was waived and the court found for the plaintiff. From the judgment in favor of plaintiff the defendant prosecutes this appeal.

It was admitted by the defendant insurance company that two of its policies of insurance, insuring the life of Charles Ted Lynde, were in force at the time of his death. These were for the face amount of $500 each, and the face value of the policies has been paid to the plaintiff, who is admitted to be the beneficiary under both policies. The policies provided, with certain exceptions which were admittedly not present here, that if the insured's death was caused by "external, violent and purely accidental means" the company would pay an additional amount equal to the face amount of the policies.

Thus the sole issue tried was whether or not the insured's death was caused by an accident within the meaning of the policies. After introducing in evidence a properly certified death certificate signed by a deputy coroner and filed with the Los Angeles County Health Department, Division of Vital Statistics of the State of California, the plaintiff rested her case.

This certificate stated the name of the deceased, his residence and the place of death, which was Glendale, in the county of Los Angeles, California. There continued a statement of other information about the birth, age, occupation, etc., and then in answer to a series of questions the following appears:

"19–1 Disease or condition directly leading to death (A) *Carbon monoxide poisoning*

"Antecedent causes (B) *Inhalation of CO gas*

"22A Accident Suicide Homicide *Accident*

"22F How did injury occur? *Burning heater with windows closed*"

23A was the certification. It was signed by a deputy coronor, and it stated "I hereby certify that I have held an investigation on the remains of the deceased and find that the deceased came to death at the hour and date stated above."

The defendant filed a motion, in the nature of a demurrer, which was overruled.

It then introduced some depositions. One of these consisted of the testimony of a man who lived across the hall in the same apartment house where Lynde lived. Another was the deposition of the manager of the apartment house. From these it appeared that Lynde was a married man with one small child. He was addicted to the use of alcohol and went on periodic drinking spells. He had been drinking and his wife had temporarily left him. His neighbor had seen him on December 19, at which time he appeared to be intoxicated. The same neighbor had heard some conversation in Lynde's apartment on the evening of December 20. After that he did not see Lynde, but on December 22 he noticed an odor in the hall and on Sunday the odor was more pronounced. He called the police and when they came they forced an entry into the apartment. There they found Lynde's bloated body on the bed. There were some empty beer bottles in the room.

There was also introduced in evidence the deposition of a Dr. Deutch, who was a licensed doctor of medicine practicing in California and employed as an autopsy surgeon for the coroner of Los Angeles County. He saw Lynde's body on December 24, 1951, and at that time it had undergone a severe degree of decomposition with the characteristic odor. He stated that it was necessary to obtain a reliable specimen of blood in order to form a medical opinion as to whether or not death resulted from carbon monoxide poisoning. This was not obtainable, for the blood had decomposed so that no reliable specimen could be obtained. He concluded by saying "I could not give an opinion based on medical certainty as to cause of death in this instance."

This was all of the pertinent testimony before the court, which, as stated, found in favor of plaintiff. It is contended that there was no competent evidence upon which the court could so find.

■ If the insured accidentally died of carbon monoxide poisoning, then the death was one compensable under the policies. There is no serious contention to the contrary and similar policies have been so construed. Cleaver v. Central States Life Ins. Co., 346 Mo. 548, 142 S.W.2d 474; Brock v. American Central Life Ins. Co., Mo.App., 44 S.W.2d 200.

■ As to the question whether or not the death was accidental or suicidal; if the deceased did in fact die of inhaling carbon monoxide gas and no other facts were shown, the law would presume that death was caused by accidental, and not by intentional, means. Edwards v. Business Men's Assur. Co. of America, 350 Mo. 666, 168 S.W.2d 82; Murphy v. Western & Southern Life Ins. Co., Mo.App., 262 S.W. 2d 340. The only evidence, however, upon which plaintiff relies is the California death certificate. It will be noted that the certificate states that death was accidental. This, however, was properly ruled out by the trial court as a conclusion. Callahan v. Connecticut General Life Ins. Co., 357 Mo. 187, 207 S.W.2d 279.

The appellant's main point is that the death certificate was not competent evidence to prove the cause of death. The respondent conversely maintains that the death certificate is prima facie evidence of the facts stated in it by virtue of the statutes of California, Section 10551, Deering's Health & Safety Code Annotated of California, Volume 1, West's Ann.Cal. Health & Safety Code. § 10551, which provides that such a certificate is "prima facie evidence in all courts and places of the facts stated in it". We are cited to California cases which interpret this section and hold that the statement in a death certificate as to the cause of death is prima facie evidence of the cause. People v. Crozier, 119 Cal.App.2d 204, 258 P.2d 1029; Bennett v. Brady, 17 Cal.App.2d 114, 61 P.2d 530; Bryson v. Manhart, 11 Cal.App.2d 691, 54 P.2d 778.

■ We are not concerned with California's construction of the statute as it

relates to the evidentiary weight to be accorded the certificate. It is true that the substantive rights of a party litigant are governed by the law of the state where the right was acquired, that is the lex loci. This, however, does not mean that the right, litigated in another state, must be tried under the same rules of procedure employed in the state where the action arose. The question of the admissibility of the death certificate and the weight to be accorded it is procedural and the law of Missouri, the lex fori, prevails. Hall Motor Freight v. Montgomery, 357 Mo. 1188, 212 S.W.2d 748, 2 A.L.R.2d 1292; Hopkins v. Kurn, 351 Mo. 41, 171 S.W.2d 625.

■ As to the laws of Missouri the death certificate was admissible as a properly authenticated record kept in a public office of a sister state by virtue of our own statutes. Section 490.220 RSMo 1949, V.A. M.S. Our statutes also provide that a death certificate filed within the prescribed time shall be prima facie evidence of the facts stated in the certificate. Section 193.170 RSMo 1949, V.A.M.S. This, of course, refers to certificates made within the state of Missouri, but there is no reason why a death certificate of another state should not be given the same weight when the laws of that state require the certificate to be made in a manner similar to our own requirements in all essential respects. The certificate under consideration was made by the coroner pursuant to Section 10425, Deering's Health & Safety Code Annotated of California, Volume 1, West's Ann.Cal. Health & Safety Code, § 10425, which directs that the coroner shall make such certificate when death occurs without medical attendance. The certificate therefore has the same value as evidence as that fixed by our statute and it is prima facie evidence of the facts stated in it.

■ What are facts, as that word relates to this subject, has been considered in numerous opinions of our courts. The case of Simpson v. Wells, 292 Mo. 301, 237 S.W. 520, loc. cit. 523, dealt with a certificate of death which contained the following:

"'(17) I hereby certify that death occurred on the date stated above, at 8:25 a. m. The cause of death was as follows: Shock and injuries, traumatic amputation of both feet, due to street car.

"'Wm. Dever, M. D., Deputy Coroner.'"

A number of prior Missouri decisions were reviewed in that case and it was held that the certificate was prima facie evidence of the cause of death. It should be noted, however, that the deceased died in a hospital with medical attendance and that the coroner who signed the certificate was also a physician. The Simpson case was cited in Griffith v. Continental Casualty Co., 299 Mo. 426, 253 S.W. 1043, but the question of what constitutes facts was not before the court. Both of the foregoing cases are discussed in Callahan v. Connecticut General Life Ins. Co., supra, 357 Mo. 187, 207 S.W.2d 279, loc. cit. 286, 287.

That case holds that a mere probability is not proof and it cites with approval Schmidt v. Supreme Council of Royal Arcanum, Mo.App., 207 S.W. 874, 875, of this court, wherein we held that a certificate by a deputy coroner containing the statement that death was due to "hemorrhage, due to knife wound on wrist * * *" was a statement of a conclusion and not a fact.

Applying the law of the cited cases to the facts before us, it appears that the deputy coroner was stating nothing more than that he had concluded that the death probably arose from carbon monoxide poisoning. The certificate itself would so indicate as the coroner certifies only to the time and place of death. He could not certify to the other answers given because they were not within his knowledge. When we evaluate such evidence with the uncontradicted statement of the coroner's

own autopsy physican, who said it was medically impossible to determine that death was caused by carbon monoxide poisoning, the weight of the certificate is destroyed.

If it was within the knowledge of the coroner that a heater was burning with the windows closed, as stated in the certificate, we would still be without evidence. In Cleaver v. Central States Life Ins. Co., supra, 346 Mo. 548, 142 S.W.2d 474, 477, the Supreme Court stated: "The nature of carbon monoxide gas, and how it operates to produce its effects, are not matters of which courts can take judicial notice, but were proper subjects of expert testimony."

The respondent maintains that the defendant's testimony does not rebut the statement made in the death certificate. This is certainly true, for it is entirely possible that the insured did die from the cause stated. However, the defendant's testimony destroyed any weight to be accorded the statement relating to the cause of death. Even where prima facie evidence is presented by a death certificate, the opportunity of the one who made it to know the facts is a proper subject of inquiry. Francis v. Sam Miller Motors, Mo.Sup., 282 S.W.2d 5.

The only conclusion that can be reached from the evidence before us is that the deceased died of an unknown cause, and for that reason the judgment should be reversed and the Commissioner so recommends.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly reversed.

ANDERSON, P. J., RUDDY, J., and NOAH WEINSTEIN, Special Judge, concur.