Mary E. MARKER, Appellant,

v.

**PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellee.**

No. 17961.

United States Court of Appeals
Fifth Circuit.

Dec. 17, 1959.

Rehearing Denied Feb. 2, 1960.

Horace P. Shelton, Jr., Hoyo, Shelton & Haight, San Antonio, Tex., for Mary E. Marker, appellant.

Grady Barrett, James D. Baskin, Jr., San Antonio, Tex., for appellee.

Before RIVES, Chief Judge, and HUTCHESON and TUTTLE, Circuit Judges.

HUTCHESON, Circuit Judge.

Brought on November 4, 1958, by The Prudential Insurance Company of America, the insurer, against Mary E. Marker, the beneficiary in each of the policies in suit, the suit was for a declaratory judgment determining the liability of appellee on two insurance contracts issued by it on the life of Andrew R. Marker, Jr., husband of appellant.

One of the policies, dated April 22, 1955, provided for a face amount of $5000, decreasing term benefits in the original amount of $9000, and $5000 accidental means benefits; and the other policy, dated December 12, 1957, provided for the face amount of $5000, decreasing term benefits in the amount of $25,-000, and $5000 accidental death benefits. Each of these contracts contained pro-

visions to the effect that, if death occurred by means of suicide within two years after issuance, no benefits would be paid but the premiums paid in would be refunded; and each policy also provided that no accidental death benefits would be paid in the event of death by suicide.

The appellant, after answering the complaint, filed a counter-claim against appellee, praying for payment of the face amounts, the decreasing term benefits, and the accidental death benefits in the insurance contracts, as well as twelve per cent statutory penalties and attorneys' fees.

Each party filed a motion to strike portions of the other party's pleading; each party made requests for admissions of fact upon the other party; each party filed objections and answers to the other party's request for admissions; and at least two lengthy pre-trial conferences were held by the trial judge, at which time attorneys for each party hereto presented briefs and other arguments and authorities in connection with both the motions to strike and the requests for admissions of fact.

In her pleadings, the appellant denied the authenticity of the first death certificate, pleaded by the company, and counter-claimed, pleading the amended death certificate as one of the facts entitling her to recover.

The trial court sustained the company's motion to strike that portion of defendant's pleading containing the amended death certificate and simultaneously overruled her motion to strike the provisions of the company's pleading setting out the original death certificate.

At the trial of the case, in pre-trial conferences and in several signed orders, the trial judge ruled that he would admit the original death certificate but would not admit the amended one, thereby, as defendant claimed below and claims here, effectively tying her hands by permitting the jury to see and examine the death certificate listing suicide as the cause of death, while at the same time refusing to permit appellant to show in any way that this certificate had been superseded, amended, altered, and corrected by the amended certificate which was furnished to the company's attorney on the 25th day of November, 1958.

After a trial on the facts, which, as material here, are summarized in the margin,[1] the cause was submitted on special issues, and, the jury answering,

1. The insured died on July 5, 1958, in his home at 110 Greenmeadow Street, San Antonio, Bexar County, Texas about 1:30 A.M. The immediate cause of death was a shot fired from a 22 caliber rifle owned by deceased, the entrance wound being underneath the chin right on the midline approximately one and one-half inches below the lower edge of the chin, and the path of the bullet went straight upward into the cranial cavity.

The appellant was the only other person present on the premises at the time her husband met his death, and, according to her testimony, death ensued after a protracted period of violent action on the part of her husband.

Shortly thereafter, police officers of the San Antonio Police Department and the Bexar County Medical Examiner, Dr. Robert Hausman, arrived upon the scene and conducted an investigation of the fatal shooting, including interrogation of the appellant and viewing and photographing the disarray of parts of the Marker house. The medical examiner subsequently performed an autopsy upon the body, and two days later, on July 7, 1958, he executed a certificate of death in which he gave as the primary cause of death "bullet wound of brain" and in which he concluded that death was due to suicide.

Nearly three months later, by letter dated Sept. 26, 1958, appellant's agent and attorney, Horace P. Shelton, Jr., sent the insurance contracts and various forms constituting proofs of death to the appellee. In that letter of Sept. 26, 1958, Attorney Shelton, on behalf of appellant, made demand upon the appellee for payment of the face amounts, decreasing term benefits, and the accidental death benefits of both insurance contracts, promising institution of suit to recover those amounts plus twelve per cent statutory damages and attorneys' fees, if the amounts were not paid within the statutory period. Included in the forms furnished as proofs of death was a photostatic copy of the death certificate as executed by Medical Examiner Hausman,

"Yes" to question No. 1, whether the death was suicide, there was a judgment for plaintiff, and defendant has appealed, presenting twenty-one numbered assignments of error which, argued in groups by appellant, are set out in the margin under six heads.[2]

While we are of the clear opinion that the claims of error, grouped under the first ground, when considered as a whole, are well taken and that the judgment must be reversed therefor, we are, for the reasons to be stated, of the equally clear opinion that none of the other grounds present reversible error.

Taking them up in inverse order, we dispose of Point 6, Assignment No. 21, that the evidence demanded a verdict for the defendant, by saying that no motion was made for a directed verdict and that, if one had been made, it must have been denied on the ground that the case on the evidence was not one for an instructed verdict but for determination by the jury.

As to Point 3, Assignment No. 19, in view of the fact that the court's

definition of "suicide", complained of in it, was taken directly from the policy, it is difficult to understand how it could be regarded as error to give it. Certainly the argument in appellant's brief, that this charge placed the burden upon her to prove that the deceased was sane, is not soundly based, since the court nowhere in the charge placed any such, indeed any, burden on defendant.

As to Point 4, Assignment No. 18, appellee points to nothing material to the case or in anywise prejudicial to appellant occurring in connection with this matter. Even if the action of the court, in deeming the answer submitted, was error, it was certainly harmless, for the appellee did not offer such requested fact as deemed admitted by the court in evidence. This being so, the complaint on this score presents nothing for our consideration.

Of Point 3, Assignment No. 14, permitting Morales to testify over the objection that he was not qualified, it is too plain for argument that it was for the district judge to determine his qualification vel non, and there was no abuse of

dated July 7, 1958, and attached to that death certificate was a certificate executed by the appellant in which she stated that she did not agree with the Medical Examiner's conclusion that death was by suicide and that she proposed to contest that conclusion with every legal means at her command.

Thereafter, on or about Oct. 8, 1958, the appellee sent its home office representative to San Antonio to investigate the fatal shooting, and, on Nov. 4, 1958, commenced this action for declaratory judgment, praying the court to determine and declare its liabilities and obligations under the insurance contracts.

On Nov. 18, 1958, the Medical Examiner executed and filed an amended death certificate, in which he declared that the death had been caused by an accidental shooting, and this amended certificate was, on Nov. 25, furnished to plaintiff's attorney.

2. (1) (Assignments Nos. 1 through 7, Nos. 12 and 13, and No. 20) complaining of the rulings and actions of the court with respect to the original and the amended death certificates and the testimony of Dr. Hausman in regard thereto.

(2) (Assignments Nos. 8 through 11, and related assignments Nos. 15 through 17) complaining of the actions and rulings, denying appellant's motion to strike plaintiff's pleading relating to failure to make timely proof of accidental death and allowing appellee to present evidence in support of the claim; in not sustaining appellant's defense of waiver; and in submitting to the jury questions Nos. 4, 5, and 6.

(3) (Assignment No. 14) complaining of the ruling permitting Morales to testify as a ballistics expert, over the objection that he was not qualified.

(4) (Assignment No. 18) complaining of the ruling of the court in "deeming admitted" plaintiff's request for admission of fact No. 22.

(5) (Assignment No. 19) that the court erred in defining the term "suicide" as the policy defines it, "The intentional killing of himself by a human being, whether sane or insane."

(6) (Assignment No. 21) that considering the record as a whole a verdict for appellant was demanded, and the verdict of the jury holding the death to be suicide was manifestly wrong and ought not to stand.

discretion in holding him qualified. Besides the evidence was merely cumulative and corroborative of testimony previously given by two witnesses called by appellant, and if there was error, it was harmless error.

The rulings grouped under Point 2, complained of in Assignments Nos. 8 through 11, and related Assignments Nos. 15 and 17, present nothing in anywise resembling reversible error. The issue of waiver was not submitted to the jury. No charges on the issue were requested, and questions 4, 5 and 6 were not answered by the jury.

We come then to the vital assignments in the case, Nos. 1 through 7, and Nos. 12, 13 and 20, grouped under Point 1, to say in respect to them: that, while the law is, generally speaking, in great confusion[3] upon the primary questions dealt with in these assignments, the admissibility in evidence, and the effect in actions on insurance policies, of death certificates containing conclusions as to suicide and accident, it is certainly true that, if admissible, they are admissible as no more than prima facie evidence; that the action of the court in this case in admitting the original death certificate, while refusing to admit the amended certificate and the tendered testimony of

Hausman[4] with respect to the making of both of them, was serious and highly prejudicial; and that the case will have to be reversed because of the action of the court in giving the plaintiff the benefit of the admission into evidence of the original death certificate and at the same time denying the defendant the benefit of the amended certificate and of the relevant evidence of Hausman in explanation of the making of the original and the amended certificate.

While the conclusion set out just above, that the case was not fairly tried, is sufficient for the disposition of this appeal by reversal, since the case will be retried, it is necessary for us to decide and determine, if we can, (1) the admissibility of the certificate as originally prepared and as amended; (2) its scope and effect as evidence; and (3) the correctness of the court's rulings in respect to the other assignments grouped under this point.

Appellee justifies the admission into evidence of the original death certificate, which had been furnished by appellant as part of her proofs of loss, as an admission of the beneficiary against interest. Thornell v. Missouri State Life Ins. Co., Tex.Com.App., 249 S.W. 203. Cf. New York Life Ins. Co. v. Taylor, 79 U.S.App. D.C. 66, 147 F.2d 297. It justifies the

---

3. 32 C.J.S. Evidence § 638(a) and (b), pages 491 to 499; 29 Am.Jur., "Insurance", Secs. 1489-90-91; 20 Am.Jur. "Evidence", Sec. 1084; Carson v. Metropolitan Life Ins. Co., 156 Ohio St. 104, 100 N.E.2d 197, 28 A.L.R.2d 352; Canada Life Assur. Co. v. Houston, 9 Cir., 241 F.2d 523, 63 A.L.R.2d 1130 and note; 24 Tex.Jur. "Inquests", Secs. 1, 2, and 3, pp. 447-450.

4. The record shows that when defendant proffered Dr. Hausman as a witness, the following colloquy occurred:

"The Court (to reporter): Let the record show that the court now states to counsel for both plaintiff and defendant that the court is holding as a part of this case that the amended death certificate executed by Dr. Hausman in November, 1958, in reference to the death of Mr. Marker, is not admissible. And, Doctor, I am instructing you now, and I want the record to show it, that when you are asked a question, you must answer that question directly, and don't throw in any opinion that you are not asked for. I am instructing you, Counsel, not to ask the doctor about any opinion as to what caused the death of this man, except, of course, as to a gunshot wound; but I mean specifically by that that you can't ask him whether it was suicide.

"Mr. Barrett: I agree with the Court on that.

"Q. (by Mr. Shelton): Doctor, how long a period of time did your investigation of this case cover; from the date of death until you finally closed your file, how long were you investigating this case?

"Mr. Barrett: If the court please, we are going to object to that as being immaterial and irrelevant to any issue in this case.

"Mr. Shelton: I would like for the record to show that.

"The Court: I see no relevancy at this stage of the proceedings. I sustain the objection."

exclusion of the amended certificate and the tendered evidence of Dr. Hausman by invoking the principle authoritatively laid down by the Supreme Court of Texas in Boehme v. Sovereign Camp Woodmen of the World, 98 Tex. 376, 84 S.W. 422, decided before the enactment of the present Texas Sanitary Code, dealing with death certificates and citing in support Service Mutual Ins. Co. v. Banke, Tex. Civ.App., 155 S.W.2d 668; Folse v. Monroe, Tex.Civ.App., 190 S.W.2d 604; Tichenor v. Little, Tex.Civ.App., 279 S. W.2d 379; Kentucky Home Mutual Life Ins. Co. v. Watts, 298 Ky. 471, 183 S.W. 2d 499; and Standard Oil Co. v. Moore, 9 Cir., 251 F.2d 188.

On her part, appellant, earnestly arguing that the certificate, as it was originally prepared and as it was amended, and the testimony of Hausman, which the court refused to permit her to elicit, were admissible, invokes 28 U.S.C.A. § 1732, "Record made in regular course of business", and the Texas statutes following: Art. 989a, Vernon's Ann.C.C.P.; [5] Vernon's Annotated Texas Statutes, Art. 4477, Rule 41a; [6] Vernon's Annotated Texas Statutes, Article 4477, Rule 51a; [7] and Vernon's Annotated Texas Statutes, Article 4477, Rule 54a. [8]

Recognizing that it has been held by the Supreme Court in the Boehme case, that the purpose of an inquest is merely to detect crime and to take preliminary steps to secure a trial of probable criminal offenders, and that [98 Tex. 376, 84 S.W. 423] "it was not a purpose of our lawmakers to make the inquest a means of perpetuating testimony to be used in a civil suit, or by the finding of the justice to manufacture evidence for use in a case between other parties", appellant, pointing out that that case was tried before the present Sanitary Code was in effect, cites later Texas cases holding that, under the present statutes, death certificates are admissible to prove the cause of

---

5. Providing: in Sec. 1 for the establishment and maintenance of the office of medical examiner; in Sec. 6 for the holding of inquests in the following cases—"1. * * * 2. * * * 3. * * * 4. * * * 5. When any person commits suicide, or the circumstances of his death are such as to lead to suspicion that he committed suicide.

* * * * *

"11. The Medical Examiner shall keep full and complete records, properly indexed, giving the name if known of every person whose death is investigated, the place where the body was found, the date, the cause and manner of death, and all other relevant information concerning the death, and shall issue a death certificate. The full report and detailed findings of the autopsy, if any, shall be a part of the record. Copies of all records shall promptly be delivered to the proper District, County, or Criminal District Attorney in any case where further investigation is advisable. Such records shall be public records."

6. " * * * And the Justice of the Peace or other proper officer whose duty it is to hold an inquest on the body of any deceased person, and to make the certificate of death required for a burial permit, shall state in his certificate the name of the disease causing death, or, if from external causes, (1) the means of death; and (2) whether (probably) accidental, suicidal, or homicidal; and shall, in any case, furnish such information as may be required by the State Registrar in order properly to classify the death; * * * "

7. This, directing that the State Registrar shall make, establish and maintain provisions for the maintenance of a perfect system of registration, the issuance of original certificates and the filing of amended certificates, provides that an amended certificate "shall, if accepted for filing, be attached to and become a part of the legal record of such birth, death, or still birth. * * * "

8. "Subject to the regulations of the State Department of Health controlling the accessibility of vital records, the State Registrar shall, upon request, supply to any properly qualified applicant a certified copy of a record, or any part thereof, registered under the provisions of this Act, for the making and certification of which, he shall be entitled to a fee of One Dollar ($1.00) to be paid by the applicant; provided, that such certified copies shall be issued in only such form as approved by the State Department of Health. And any such copy of a record, when properly certified by the State Registrar, *shall be prima facie evidence in all courts and places of the facts therein stated.*" (Emphasis supplied. )

death, particularly Continental Casualty Co. v. Fountain, Tex.Civ.App., 257 S.W. 2d 338; Universal Life & Accident Company v. Barron, Tex.Civ.App., 269 S.W. 2d 467; American National Ins. Co. v. Valencia, Tex.Civ.App., 91 S.W.2d 832; Southland Life Ins. Co. v. Brown, Tex. Civ.App., 121 S.W.2d 653; Texas Department of Public Safety v. Jackson, Tex.Civ.App., 272 S.W.2d 577, 578; to which may be added Travis Life Insurance Co. v. Rodriguez, Tex.Civ.App., 326 S.W.2d 256.

In addition, she cites, as supporting her claim that the evidence was admissible under 28 U.S.C.A. § 1732, and the controlling state statutes, cases from other states and jurisdictions, cited in the margin.[9]

We recognize fully the difficulties and complexities in the way of an assured and positive determination of the question posed here, whether, giving full consideration to appellee's arguments that in the light of the many contrary Texas cases it cites, and of the cases from Texas, such as Service Mutual Ins. Co. of Texas v. Banke, Tex.Civ.App., 155 S.W.2d 668, and from other states,[10] holding that the finding of suicide or accident is not a finding of a fact but is merely an opinion or conclusion, the Texas cases appellant cites support her view, that the original and the amended certificates were admissible as such, subject to explanation and contradiction.

Nevertheless, we are of the firm opinion: that the Texas statutes appellant invokes are in substantial effect the same as the Alabama statute, which requires the doctor's certificate to state the cause of death and "whether (probably) accidental, suicidal or homicidal", Sorrow v. Industrial Life & Health Ins. Co., 259 Ala. 544, 68 So.2d 43, 45, and that the findings in the original and the amended certificate of suicide and accident were findings of fact, admissible as prima facie evidence only, and subject, under the controlling rules of evidence, to full explanation and contradiction.

The judgment is, therefore, reversed and the cause is remanded for further and not inconsistent proceedings.

TUTTLE, Circuit Judge (specially concurring).

I agree with the holding of this Court that the judgment must be reversed and the case remanded for a new trial, but with the greatest deference I cannot concur in that part of the opinion which holds that the part of the death certificate which expresses the opinion of the medical examiner that death was caused by suicide is admissible under the Texas law.

My concurrence in the result arises from my agreement with the majority that when the insurance company introduced the original death certificate[1] showing that in the opinion of the medical examiner death resulted from suicide,

9. Thomas v. Conemaugh & Black Lick R. Co., 3 Cir., 234 F.2d 429; Hunter v. Derby Foods, Inc., 2 Cir., 110 F.2d 970, 133 A.L.R. 255; Canada Life Assur. Co. v. Houston, 9 Cir., 241 F.2d 523; Sorrow v. Industrial Life & Health Ins. Co., 259 Ala. 544, 68 So.2d 43; Felker v. Metropolitan Life Ins. Co., Mo.App., 288 S.W.2d 26; Family Fund Life Ins. Co. v. Wiley, 91 Ga.App. 225, 85 S.E.2d 448; Rath v. Industrial Comm., 99 Ohio App. 261, 129 N.E.2d 525; Gay v. Pacific Mutual Life Ins. Co., 5 Cir., 237 F.2d 448.

10. Lynde v. Western & Southern Life Ins. Co., Mo.App., 293 S.W.2d 147; Kentucky Home Mutual Life Ins. Co. v. Watts, 298 Ky. 471, 183 S.W.2d 499;

Carson v. Metropolitan Life Ins. Co., 156 Ohio St. 104, 100 N.E.2d 197, 28 A.L.R.2d 344; and an exhaustive note on verdict or report as opinion and hearsay evidence, Secs. 7 and 8 at pages 361–364, holding that a finding of suicide in a death certificate is, within the meaning of the statute, not a finding of a fact but merely an opinion or conclusion.

1. It had a right to introduce this death certificate just as it was submitted to it because it was a part of the original proof of death filed by the beneficiary. It was tendered, however, without being limited to that purpose alone and was admitted in evidence by the trial court without restricting the effect of it to be considered by the jury.

it was permissible for the appellant to attack that opinion by the subsequent testimony of the medical examiner. I do not think that the amended certificate in which he changed his opinion as to the cause of death was itself admissible in evidence.

I think the policy considerations given by the Supreme Court of Texas for not permitting the medical examiner to pre-judge this question of such vital impor-tance, as stated in Boehme v. Sovereign Camp Woodmen of the World, 98 Tex. 376, 84 S.W. 422, quoted in the majority opinion, apply equally under the present Texas statute.

I would, therefore, reverse on the facts of this case not to permit the amendment to the death certificate to be tendered in evidence, but to permit appellant to pre-sent the medical witness himself to im-peach his own initial opinion that death was caused by suicide.