

# THE ATTORNEY GENERAL
# OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

August 6, 1990

Honorable Charles W. Chapman
Criminal District Attorney
Hays County Courthouse, Suite 208
San Marcos, Texas 78666

Opinion No. JM-1202

Re: Inquest procedures under chapter 49 of the Texas Code of Criminal Procedure (RQ-2051)

Dear Mr. Chapman:

You ask a number of questions relative to inquest procedures under subchapter A of chapter 49 of the Code of Criminal Procedure. Subchapter A is applicable to deaths in a county that does not have a medical examiner. You advise that your questions are prompted by the decision of a justice of the peace to hold an "inquest hearing" following an earlier determination at an "inquest" as to the causes of death. You ask:

> (1)     In the event the Justice of the Peace has conducted the inquest and made a determination, is that determination final with regard to Articles 49.04 and 49.05? Can, in other words, there be a hearing after an inquest has been conducted?

> (2)     If the Justice of the Peace has made a determination under Article 49.05 and a subsequent inquest hearing is held under Article 49.14, and a jury's determination is different than that of the Justice of the Peace, which is the prevailing determination? Does the hearing jury or another Justice of the Peace have the right to amend the finding of the original Justice of the Peace?

> (3)     May the Justice of the Peace who has made the initial determination be called as a witness in the subsequent jury hearing to testify as to her knowledge of the death scene and the death scene investigation?

(4)      If so, may the Justice of the Peace then recuse herself from presiding to be a witness in the matter and request another available justice of the peace (in the same county) to preside over the hearing?

(5)      Since the Justice of the Peace, under Article 49.05(3), can conduct an inquest 'at any other place determined to be reasonable by the justice,' may the place be located in an adjacent county? What, if any, are the geographical limitations on the place for the inquest or inquest hearing?

(6)      Article 49.14(d) provides that the inquest hearing may be public or private. If it is private, may the Justice of the Peace make it 'selectively private;' that is, permitting the family of the deceased to observe the hearing, for example, but no one else other than the jurors, herself, and the state's attorney?

You have provided us with the background information that prompted your questions. A father, mother, and two children, a boy and a girl, died in their home during the early morning hours of March 4, 1990, in Buda, Hays County. Under the circumstances you have related, an "inquest" was required under article 49.04 of the Code of Criminal Procedure. The justice of the peace in the precinct conducted an "inquest" that resulted in the justice requesting Dr. Robert Bayardo, Medical Examiner of Travis County, to perform autopsies on the four deceased persons. See Code Crim. Proc. art. 49.10. Following the autopsies, Dr. Bayardo made findings that the mother and two children came to their deaths as the result of gunshot wounds and that the father's death was the result of a gunshot wound, self-inflicted. You have furnished us with the autopsy reports that reflect in detail the procedures employed in the examination and the conclusions reached by the medical examiner. You advise that the justice of the peace's inquest findings correspond with the conclusions reached in the autopsy reports. On March 23, 1990, the justice of the peace filed death certificates reflecting that the mother and two children died of gunshot wounds. On March 29, 1990, the justice filed a death certificate for the father that

found the cause of death to be gunshot wounds, self-inflicted.[1]

You relate that on April 15, 1990, the remains of the father and son were removed from the cemetery at the request of the next of kin of the father. See Health & Safety Code § 711.004. Autopsies were performed on their remains by the Bexar County Medical Examiner, Dr. Vincent J. M. Dimaio. You have been advised that Dr. Dimaio concluded that it would be necessary for him to have the benefit of further evidence before he could reach a decision. You state that about June 15, 1990, you were advised by the justice of the peace that conducted the "inquest" that she had set an "inquest hearing" for June 27, 1990. This hearing has been continued to an indefinite date. You state that you did not request the "inquest hearing," and in the event such a hearing is held, you are going to ask for a jury.

You ask whether the justice of the peace may hold an "inquest hearing" after findings have been made as the result of the "inquest."

Article 49.01 of the Code of Criminal Procedure defines "inquest" and "inquest hearing," as follows:

> (2) 'Inquest' means an investigation into the cause and circumstances of the death of a person, and a determination, made with or without a formal court hearing, as to whether the death was caused by an unlawful act or omission.

> (3) 'Inquest Hearing' means a formal court hearing held to determine whether the death of a person was caused by an unlawful act or omission and, if the death was caused by an unlawful act or omission, to obtain evidence to form the basis of a criminal prosecution.

---

1. Attorney General Opinion H-1064 (1977) concluded that where it is determined that an erroneous cause of death is shown in a death certificate, the error may be corrected in accordance with rule 51a of article 4477, V.T.C.S., (now see Health & Safety Code § 191.028) by the attachment of an amending certificate.

Article 49.05 requires that the justice of the peace shall conduct an inquest immediately or as soon as practicable after the justice of the peace is notified of the death. Article 49.03 of the Code of Criminal Procedure states that the powers granted and duties imposed on the justice of the peace are independent of the powers and duties of a law enforcement agency investigating a death.

Under article 49.14 of the Code of Criminal Procedure an "inquest hearing" may be held under the following circumstances:

> (a) A justice of the peace conducting an inquest may hold an inquest hearing if the justice determines that the circumstances warrant the hearing. The justice shall hold an inquest hearing if requested to do so by a district attorney or a criminal district attorney who serves the county in which the body was found.

Subsection (b) allows an "inquest hearing" to be held with or without a jury unless the district attorney requests that the hearing be held with a jury.

We do not construe article 49.14 to provide for a hearing to review an earlier determination as to the cause of death made at the inquest. We believe the provisions of article 49.14 are to be utilized when the justice of the peace or the district attorney feel that there is insufficient evidence available to make a determination as to the cause of death. Evidently, the justice of the peace felt that an article 49.14 hearing was unnecessary at the time she made her findings. The conclusions as to cause of death in the four death certificates is certified to be "on the basis of examination and/or investigation, in my opinion, death occurred at the time, date, and place due to the cause(s) and manner as stated." Apparently, you were satisfied as to completeness of the investigation since you state that you did not request a hearing.

The Supreme Court of Texas in Boehme v. Sovereign Camp Woodmen of the World, 84 S.W. 422 (1905) contrasted an inquest conducted under our statutes with an inquest at common law. The court stated that, unlike a common law coroner's inquest, our statutes provide no means for traversing the finding, "nor is any method whatever secured for the correction of an erroneous finding." See 78 A.L.R.2d 1219 Coroner's Inquest. Under our statutes an

inquest proceeding does not have to be public. The hearing at common law was public. In refusing to admit the results of an inquest finding of suicide in a suit against an insurance company, the Boehme court noted the pit-falls attendant to allowing the admission of the results of an inquest. We believe the observations of the court in Boehme may be relevant to the issue of whether to allow a justice of the peace to hold a second hearing proceeding after having made a decision as to the cause of death. In Boehme, the court stated:

> The purpose of such inquest under our law is merely to detect crime, and to take the preliminary steps to secure a trial of the supposed offender.
>
> . . . .
>
> Especially do we think that it was not a purpose of our lawmakers to make the inquest a means of perpetuating testimony to be used in a civil suit, or by the finding of the justice to manufacture evidence for a use in a case between other parties. Commenting upon the impolicy of such a rule, Chief Justice Hayt, of the Supreme Court of Colorado, says: 'In case of death under suspicious circumstances, or resulting from accident, the rule permitting inquisitions to be used in evidence would result in a race and scramble to secure a favorable coroner's verdict, that would influence, and perhaps control, in case suit should be instituted against life insurance companies upon policies of insurance, and in cases of accidents occurring as a result of negligence on the part of corporations operating railways, street car lines, mining for coal or the precious metals, et cetera. Law writers, of late, have frequently animadverted upon the carelessness with which such inquests are frequently conducted, and to allow inquisitions to be used in a suit between private parties upon a cause of action growing out of the death of the deceased, as in this case, would be to introduce an element of uncertainty into the practice, which we think would be contrary to public policy and pernicious in the extreme.

Germania, Etc., Ins. Co. v. Lewin, 24 Colo. 43, 51 Pac. 488, 65 Am. St. Rep. 215.

Smith, Cooperation Between Law and Science in Scientific Proof, 20 Tex. L. Rev. 433 (1941) reviews short-comings of our system of allowing justices of the peace to perform the function of the coroner at common law.[2]

> The justice, being an elected officer, is not free from the possibility of political pressure, and his short term of office does not permit him to accumulate experience in his very occasional duties as coroner. His jurisdiction is ended if he believes the case to be suicide. Inquest seems hardly available in behalf of an accused who would bolster his protested innocence by scientific confirmation. The proceeding is given the form of a judicial inquiry while having few of its incidents. It does not permit of traverse or appeal, and the verdict reached is not res adjudicata. Indeed, by the better view, it is inadmissible both on the subsequent homicide trial and in any civil litigation based on the death. The inquest is but a preliminary device to gather evidence in connection with possible criminal proceedings, being auxiliary to and in aid of both the examining trial and subsequent grand jury deliberations.
>
> . . . .
>
> The Texas system of investigating sudden death interposes a lay judgment between consecutive steps of a scientific inquiry in which time is of the essence, and oft times the evidence is evanescent.

---

2. Article 49.25 of the Code of Criminal Procedure requires counties having a population of 500,000 or more (and not having a reputable medical school) to provide a medical examiner to conduct inquests rather than justices of the peace.

The Court of Criminal Appeals in <u>Fishbeck v. State</u>, 225 S.W.2d 854 (1948) stated that under articles 969 (now article 49.09) and 927 (now article 49.08) of the Code of Criminal Procedure, a justice of the peace was authorized to order the disinterment of the deceased's body on February 12, 1947, for the purpose of holding an inquest despite the fact that an inquest had been held on June 9, 1945, following the death of the deceased. The reason given by the justice of the peace for the subsequent proceedings was that the first inquest "was incomplete and inconclusive."

Article 49.09 (formerly article 969)[3] of the Code of Criminal Procedure provides:

> (a) If a body subject to investigation under Article 49.04 of this code is interred <u>and an authorized person has not conducted an inquest</u> required under this subchapter, a justice of the peace may direct the disinterment of the body in order to conduct an inquest. (Emphasis added.)

Article 49.08 (formerly article 927) of the Code of Criminal Procedure states:

> A justice of the peace conducting an inquest may act on information the justice receives from any credible person or on facts within his knowledge.

The court concluded that the portion of the justice of the peace's order directing a second inquest and opinion testimony given at the subsequent inquest were admissible in a murder trial. Courts, other than in <u>Fishbeck</u>, appear to have consistently followed <u>Boehme</u> in holding that findings at an inquest are not admissible. <u>See, e.g.,</u> <u>Armstrong v. Employers Casualty Co.</u>, 357 S.W.2d 168 (Tex. Civ. App. - Waco 1962, no writ); <u>Combined Amer. Ins. Co. v. McCall</u>, 497

---

3. Article 969 lacks the clarity of article 49.09. Article 969 provided:

Section 1. When a body upon which an inquest ought to have been held has been interred, the Justice may cause it to be disinterred for the purpose of holding such inquest.

S.W.2d 350   (Tex.   Civ.   App.   -   Amarillo 1973,   writ bref'd n.r.e.).

The court   in Fishbeck   relied solely   on articles 969 (now article 49.09) and 927 (now article 49.08) in   reaching its conclusion despite   the fact that   article 969, as  does article 49.09, conditions   the disinterment   and inquest  on there not   having   been   an inquest   previously   held  by  a qualified person.   Under the circumstances you have   related a proper authority   held an   inquest and   ordered a   medical examiner to perform autopsies on the bodies of the   deceased persons.   To   follow   Fishbeck   would   be   contrary   to  the express provisions of article 49.09 and place no limit as to time or the number of inquests that might be held so long as the justice of the peace   had information from a person  the justice deemed credible or "facts within his own knowledge."

We believe that it was incumbent on the justice of  the peace at the inquest to   make a determination as to   whether it was necessary to hold a formal hearing in order to make a determination as   to   cause of   death.   As pointed   out   in Boehme,   death   resulting   from   suspicious   circumstances provides a   setting for   a   race and   scramble to   secure   a favorable   verdict.   It   is   logical   to   assume   that   any decision reached following an inquest will be unsatisfactory to some of the interested parties under such   circumstances. Undoubtedly, this would result in pressure being applied  to a justice of the peace to hold a further proceeding in   hope that a result favorable to   the persons urging such   hearing may be reached. We   believe the statement   by the court   in Boehme that once a   finding is made, there   is no means   for traversing the finding, would be   the conclusion of a  court confronted with the scenario you have related.

It must be recognized that an inquest finding is not to be equated with a final   judgment rendered by a court.   The inquest hearing is   held for the   sole purpose of   detecting crime.   44 Tex. Jur. 3d Inquests § 8 (1985).   The   authority granted a   justice of   the peace   in holding   an inquest  is independent of   the powers   and   duties of   law   enforcement authorities in investigating a death.   Code Crim. Proc. art. 49.03.   Clearly,   an inquest   verdict does   not preclude  a grand jury investigation   into violations of   the law.   See Code Crim.   Proc.   art.   20.01.   Nor   does   it   preclude   a district judge from   conducting a   court of   inquiry if  the judge believes   an offense   has been   committed against   the laws of this   state.   Id. art.   52.01.   Article 49.15(d)  of the Code of Criminal Procedure provides that the justice  of the peace shall deliver a copy of the inquest summary report

to the district clerk who is to retain the report "subject to an order of the district court."

We believe that it is incumbent upon a justice of the peace or the district attorney to determine whether an "inquest hearing" is necessary in making a determination as to cause of death before a finding is made following the "inquest."

As you advise, the remainder of your questions are contingent on our concluding that an inquest hearing may be ordered after a finding has been rendered at an inquest. We conclude that no such inquest hearing may be ordered under the circumstances, and therefore we do not address your remaining questions.

## S U M M A R Y

The determination of whether an inquest hearing is to be held must be made at the inquest. Subsequent to findings being rendered as to cause of death at an inquest, a justice of the peace may not order an inquest hearing.

Very truly yours

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Tom G. Davis
Assistant Attorney General